Jesse S. Weinstein, Esq.
PA Bar ID # 330059
**Phillips & Associates, PLLC**
45 Broadway, 28th Floor
New York, NY 10006
*Attorneys for Plaintiff*
(212) 248-7431

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**
----------------------------------------------------------------------X
YANEZ PEREZ,                                                                           Case No. 2:25-cv-02107

                                      Plaintiff,                         **COMPLAINT**

                -against-                                                Plaintiff Demands
                                                        A Trial By Jury

SALTZ, MONGELUZZI, & BENDESKY, P.C.,

                                      Defendant.
----------------------------------------------------------------------X

Plaintiff, by and through her attorneys, Phillips & Associates, PLLC, upon information and belief, complains of Defendant as follows:

### NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §2000e *et seq.* ("Title VII") and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §951, *et seq.*, seeking damages to redress the injuries Plaintiff has suffered as a result of being discriminated against by her employer on the basis of sex and race, together with creating a hostile work environment, sexual harassment, retaliation, and constructive discharge.

### JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 42 U.S.C. §2000e; 28 U.S.C. §1331 and §1343, and supplemental jurisdiction thereto.

3. This action involves a Question of Federal Law.

4. Venue is proper in this district based upon the fact that a substantial part of the events and omissions giving rise to the claim occurred within the Eastern District of Pennsylvania. 28 U.S.C. §1391(b).

5. On or about February 14, 2024, Plaintiff dual filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission ("PHRC").

6. On or about January 28, 2025, Plaintiff received a Notice of Right to Sue Letter from the EEOC.

7. This action is brought within ninety (90) days of said Notice of Right to Sue Letter.

## PARTIES

8. Plaintiff is an Afro-Latina, female resident of the Commonwealth of Pennsylvania, County of Philadelphia.

9. At all times material, Defendant SALTZ, MONGELUZZI, & BENDESKY, P.C. (hereinafter "SMB") was and is a domestic business corporation duly incorporated under the laws of the Commonwealth of Pennsylvania.

10. At all times material, Defendant SMB was and is a law firm headquartered at One Liberty Place, 52nd Floor, 1650 Market Street, Philadelphia, Pennsylvania 19103.

11. At all times material, Plaintiff was an employee of Defendant SMB.

## MATERIAL FACTS

12. Defendant SMB is a "leading personal injury firm securing some of the largest verdicts and settlements in the history of Pennsylvania."[1]

---

[1] *See* Saltz, Mongeluzzi, & Bendesky, P.C., https://www.smbb.com/about-firm/reputation/ (last visited January 3, 2024).

2

13. On or about August 8, 2022, Plaintiff began working for Defendant SMB as a Paralegal, with an annual salary of $70,000.

14. Plaintiff's responsibilities were mainly clerical in nature. However, she was also in charge of discovery motions for her team, as well as other administrative and financial responsibilities.

15. Throughout her employment, Plaintiff was a dedicated and reliable employee who performed all of her duties without issue.

16. Plaintiff was the only Afro-Latina on her team and at the firm.

17. On or about October 6, 2022, Plaintiff was having a conversation with a co-worker about the birth of twins, during which she noted that she could envision having a son and daughter herself one day. File Clerk, William Nater, then randomly joined in, stating, "**You might as well just have a daughter because she's gonna get fucked the same way**."

18. Crucially, Mr. Nater's statements were vulgar, deeply degrading, and laced with gender-based animus and hostility toward women.

19. The next day, Plaintiff reported Mr. Nater's discriminatory comment to Human Resources ("HR") in writing.

20. As a result, on or about October 8, 2022, Mr. Nater was terminated for his inappropriate remarks.

21. **That same day**, **in retaliation for her complaint**, **IT Analyst**, **Matthew Jasinski, mocked Plaintiff for reporting Mr**. **Nater by mimicking finger guns with his hands and stating**, "**you're getting people fired around here**." Throughout this statement, Mr. Jasinski made clear that complaints of discrimination were unwelcome at Defendant SMB.

22. Therefore, because she was a new employee, believed Mr. Jasinski was her superior, and was fearful of losing her position, Plaintiff did not report Mr. Jasinski's retaliatory comment.

3

23. However, later that month, **Mr. Jasinski told Plaintiff that her curly hair looked like "Curly Sue" and like "she stuck her finger in a socket**," implying that Afro-Latina textured hair was "**messy**" **or** "**unkempt**" compared to Caucasian hair.

24. Mr. Jasinski then raised one hand above his head and, looking directly at Plaintiff, stated, "I'm here." Immediately after, Mr. Jasinski lowered his other hand beneath the first and stated, "**You're there**. **I'm better than you**."

25. Given that Mr. Jasinski was Caucasian and Plaintiff was Afro-Latina, Plaintiff perceived this comment as carrying an undeniable racial undertone.

26. In further harassment, on or about October 12, 2022, Mr. Jasinski (Caucasian) injected "**you people always get drafted first**," referring to Plaintiff's race, in response to a conversation Plaintiff was having with coworker, Jennifer Guy, about sports a draft pick.

27. Plaintiff reasonably believed that Mr. Jasinski's use of the phrase "you people" was intended to exclude and categorize people of color, such as her, as "other" or "lesser than."

28. As another example, a few days later, Mr. Jasinski randomly approached Plaintiff and, without provocation, remarked, "What are those, stripper shoes? I know what you'd be into," reinforcing harmful racial stereotypes about Afro-Latina women and implying that Plaintiff dressed or behaved inappropriately.

29. Later that month, Mr. Jasinski became frustrated with a question Plaintiff had asked regarding the IT system, and loudly stated, "Why are you not comprehending what I'm saying to you? It is very simple." Despite Mr. Jasinskis' patronizing and misogynistic tone, *Plaintiff* apologized and remarked that the IT system was confusing. Mr. Jasinski then said, "**You would say that**…**If you weren't a monkey you would understand**."

30. Given the well-known racist stereotype comparing Black people to monkeys, Plaintiff reasonably believed that Mr. Jasinksi's use of the word "monkey" was directly related to her being Afro-Latina.

31. Plaintiff did not complain about Mr. Jasinski's discriminatory remarks due to his tenure with the firm, and because she did not want to "rock the boat."

32. As a result, she continued to endure discrimination.

33. For example, throughout October 2022, Mr. Jasinski repeatedly invoked Defendant SMB's "hierarchy" when speaking to Plaintiff, using a condescending and threatening tone to assert his perceived superiority. Specifically, Mr. Jasinski regularly emphasized that his longer tenure at Defendant SMB placed him above Plaintiff, implicitly reinforcing a power imbalance and further marginalizing her as a newer Afro-Latina employee.

34. In or around late November 2022, Plaintiff arrived at her desk to find a steak knife placed beside a note. The note, which Plaintiff had originally written to herself as a positive affirmation reading "[Plaintiff] is awesome," had been altered to say "[**Plaintiff**] **is NOT awesome**."

35. Several moments later, Mr. Jasinski approached Plaintiff and taunted her by saying, "**What are you gonna do? Go run and tell?**" Given the timing of his comment and his ongoing pattern of harassment, Plaintiff reasonably believed that Mr. Jasinski was the one who had placed the steak knife on her desk and altered her note. Mr. Jasinski's statement was clearly intended to intimidate Plaintiff and discourage her from reporting his ongoing harassment.

36. In or around January 2023, Mr. Jasinski began working on a different floor of Defendant SMB.

37. While Plaintiff assumed she would not see much of Mr. Jasinski due to his change of work location, Mr. Jasinski made it a point to continue his harassment toward Plaintiff, regularly rearranging items on her desk.

38. Then, in or around May of 2023, Plaintiff's supervisor[2], Attorney Ryane Sophia Kilmer (a transgender woman) began subjecting Plaintiff to unwanted and inappropriate sexual advances.

39. For context, while Plaintiff and Ms. Kilmer's communications had always been cordial and professional, Plaintiff did not consider Ms. Kilmer a friend outside of work.

40. Throughout May of 2023, Ms. Kilmer regularly summoned Plaintiff to her office under the pretext of reviewing completed assignments, but would instead shift the focus of their interactions to her personal life and appearance.

41. During these encounters, Ms. Kilmer frequently sought validation about her looks, discussed places she frequented socially, and shared details about leaving her wife and reentering the dating scene.  As a result, Plaintiff felt that the meetings were rarely about work, leaving her uncomfortable and undermining the professional nature of their interactions.

42. Nevertheless, on or about May 19, 2023, Ms. Kilmer sent a text message to Plaintiff's personal phone stating, "Hey, this is Sophia."  Plaintiff did not immediately notice the message, and at no point prior had she expressed any interest in socializing with Ms. Kilmer outside of work.

43. Later that day, Ms. Kilmer approached Plaintiff's desk and said, "You should get those tickets and go with your friends," referring to four tickets that an attorney at Defendant SMB was giving away for a local winery event happening that evening.  Plaintiff responded politely that

---

[2] At all times material, Ms. Kilmer was Plaintiff's supervisor and/or had supervisory authority over Plaintiff.

she needed to finish her work, but did not express any desire to attend, nor did she indicate any willingness to accept the tickets.

44. Despite Plaintiff's lack of interest, Ms. Kilmer returned to her desk two more times, pressing Plaintiff about whether she had taken the tickets. Plaintiff continued to refrain from accepting or encouraging the invitation.

45. Undeterred, Ms. Kilmer came back later that same day and announced, "**I got the tickets and we're going!**" Plaintiff, taken aback, responded, "We?" — making clear that she had never agreed to attend the event with Ms. Kilmer. Ms. Kilmer replied, "**I look cute, we look cute together**! I have a meeting after work, but I'll meet you there. Invite your friends and I'll ask who can come from mine. You better not bail on me."

46. Then, Ms. Kilmer approached Plaintiff's desk and stated, "I'm leaving to my event, **don't stand me up**. I'll text your phone."

47. That afternoon, Ms. Kilmer texted Plaintiff "We should absolutely go to this concert. It will be fun and it's free. **Plus**, **I look super cute**. **We look super cute**. Lol we got our own table with the seats."

48. While Plaintiff did not respond, Ms. Kilmer's sexually harassing behavior continued, as she messaged Plaintiff on her work and personal email approximately seventeen times inquiring as to whether she would be attending the event.

49. Later that evening, Ms. Kilmer again texted Plaintiff multiple messages, stating "I should be able to meet you around 7:30," "You are still down to go right?," "Call me when you can," "I am planning on going tonight but I will be late," "I am there," and "Hit me up if you want to come otherwise have a nice weekend. I hope everything is OK."

50. Notably, Plaintiff never accepted Ms. Kilmer's invitation.

51. Based on the above-described conduct, Plaintiff reasonably believed that Ms. Kilmer's invitation to the winery event, in addition to her comments about her physical appearance were intended to determine her interest in a romantic and/or sexual relationship.

52. Even so, fearing retaliation, Plaintiff did not immediately report Ms. Kilmer's sexual harassment because she was her supervisor.

53. Consequently, Ms. Kilmer's sexually harassing behavior continued.

54. For example, two weeks later, Ms. Kilmer approached Plaintiff and flirtatiously stated, "**you look cute**."

55. As a result, on or about June 16, 2023, Plaintiff reported all of Ms. Kilmer's above-referenced conduct to Defendant SMB's HR Department.

56. Soon after, Defendant SMB's management met with Plaintiff and Ms. Kilmer individually.

57. During the meeting, Plaintiff was assured she would face no retaliation as a result of her complaint.

58. However, on or about July 14, 2023, Plaintiff received an email from HR Representative, Jenny Boyer, asking Plaintiff to come into the office for a meeting the following day.

59. During this meeting, Ms. Boyer informed Plaintiff that HR had received an email from an individual in the office alleging that Plaintiff and her Managing Attorney, Peter Veloski, were engaged in a romantic relationship.

60. Here, HR informed Plaintiff that Mr. Veloski had already denied the allegations.

61. Plaintiff also confirmed that these allegations were completely false and emphasized her belief that the false report was lodged in retaliation for her complaint against Ms. Kilmer.

62. The following week, Plaintiff received an email from a Paralegal, Jennifer Suarez stating, "[Plaintiff] throws others under the bus."

63. As a result of the continued harassment and retaliation, Plaintiff suffered a severe anxiety attack and requested FMLA leave to obtain psychotherapy treatment.

64. On or about July 25, 2023, Plaintiff emailed Chief Operating Officer, Bradford Smith, and HR Manager, Jenny Boyer:

   "I took the day to converse with my therapist of the recent incidents at the firm and I would like to request a leave of absence due to the stability of my mental health. **After the submission of my letter regarding Ms. Kilmer's sexually inappropriate behavior, I find the false allegation of a romantic relationship with Mr. Veloski and the recent email exchange with Ms. Suarez are retaliative and thus have affected my mental health when ultimately my goal was to make the company aware of the misconduct from the Attorney who admittedly took responsibility. The discriminatory culture of this firm has really taken a toll on me**. **Besides being sexually harassed and then retaliated against, I was also called a monkey by fellow staff and comments were made about the texture of my hair**. I think both of those comments were racist. With all that has happened, it is in my best interest to take the time to deal with my mental state and work through this process with my therapist. Please advise as to next steps and to who I may send my tasks once I organize them so that the team doesn't miss any deadlines." (Emphasis added).

65. On or about July 27, 2023, Plaintiff submitted medical documentation supporting her request for FMLA leave.

66. On or about August 7, 2023, Plaintiff's request for FMLA was approved.

67. Plaintiff has not returned to Defendant SMB since July 24, 2023.

68. On or about October 25, 2023, unable to further endure Defendant SMB's discriminatory and retaliatory behavior, Plaintiff resigned.

69. On or about October 25, 2023, Plaintiff was constructively discharged.

70. The above are just some examples of the harassment and discrimination that Plaintiff endured while working for Defendant SMB.

71. Defendant SMB's discriminatory, harassing, and retaliatory conduct created working conditions so intolerable that no reasonable person in Plaintiff's position would have been able to continue their employment.

72. The hostile work environment Plaintiff endured was based on her race and sex.

73. As a direct result of the discrimination, harassment, and retaliation detailed above, Plaintiff was subjected to a series of adverse employment actions that severely impacted her professional standing and mental health, which included ongoing racial and sexual harassment, repeated acts of intimidation and ridicule for engaging in protected activity, and the deliberate spread of a false and defamatory accusation that she was engaged in an inappropriate romantic relationship with a senior attorney.  This baseless claim, which was promptly denied by both Plaintiff and the attorney involved, placed Plaintiff's employment in jeopardy and subjected her to further scrutiny and humiliation.

74. Defendant SMB's employees made repeated racist and sexist comments, engaged in sexual harassment, and otherwise treated Plaintiff less favorably than similarly situated non-Afro-Latina, non-female employees.

75. Defendant SMB would not have harassed or discriminated against Plaintiff but for her race and sex.

76. Defendant SMB would not have retaliated against Plaintiff but for her opposition to Mr. Jasinski's racial and retaliatory conduct, and her complaints of sexual harassment against Ms. Kilmer.

77. As a result of Defendant SMB's actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

78. As a result of Defendant SMB's discriminatory and intolerable treatment of Plaintiff, she suffered severe emotional distress and physical ailments.

79. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

80. As Defendant SMB's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against Defendant SMB.

**AS A FIRST CAUSE OF ACTION
UNDER TITLE VII
<u>DISCRIMINATION</u>**

81. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

82. This claim is authorized and instituted pursuant to the provisions of Title VII for relief based upon the unlawful employment practices of Defendant SMB.

83. Plaintiff complains of Defendant SMB's violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's actual and/or perceived sex and race.

84. Defendant SMB engaged in unlawful employment practices by discriminating against Plaintiff because of her actual and/or perceived sex and race.

85. Defendant SMB engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her sex and race, together with creating a hostile work environment, sexual harassment, and constructive discharge.

## AS A SECOND CAUSE OF ACTION
## UNDER TITLE VII
## <u>RETALIATION</u>

86. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

87. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> (1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

88. Defendant SMB engaged in unlawful employment practice prohibited by Title VII by discriminating and retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of her complaints of sex discrimination and sexual harassment.

## AS A THIRD CAUSE OF ACTION
## UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT
## <u>DISCRIMINATION</u>

87. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

88. The Pennsylvania Human Relations Act, 43 P.S. §§ 951-963, §955(a) provides that it shall be an unlawful discriminatory practice: "For any employer because of the…race, color, [and] [sex] …of any individual or independent contractor, or to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or

12

to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract…"

89. Defendant SMB engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her sex and race, together with creating a hostile work environment, sexual harassment, and constructive discharge.

### AS A FOURTH CAUSE OF ACTION
### UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT
### RETALIATION

90. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

91. The Pennsylvania Human Relations Act, 43 P.S. §§951-963, §955(d) provides that "It shall be an unlawful discriminatory practice…for any person, employer, employment agency, or labor organization to discriminate in any manner against any individual has opposed a practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act.

92. Defendant SMB engaged in unlawful employment practice prohibited by the Pennsylvania Human Relations Act, §955(d) by discriminating and retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of her complaints of sex discrimination and sexual harassment.

**WHEREFORE,** Plaintiff respectfully requests a judgment against the Defendant SMB:

A. Declaring that the Defendant SMB engaged in unlawful employment practices prohibited by the Title VII and the PHRA, and discriminated against Plaintiff on the basis of sex and race, together with creating a hostile work environment, sexual harassment, retaliation, and constructive discharge;

B. Awarding damages to the Plaintiff, for all lost wages and benefits, past and future, back pay and front pay and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional, and physical injury, distress, pain and suffering and injury to reputation;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendant SMB's unlawful practices.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiff demands judgment against Defendant SMB in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: New York City, New York
April 25, 2025

**PHILLIPS & ASSOCIATES, PLLC**
Attorneys for Plaintiff

By:    */s/ Jesse S. Weinstein, Esq.*
        Jesse S. Weinstein, Esq.
        45 Broadway, 28th Floor
        New York, NY 10006
        (212) 248-7431
        jweinstein@tpglaws.com