**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

|  |  |  |
|---|---|---|
| YANEZ PEREZ, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civ. No. 2:25-cv-02107 |
| v. | : | |
| | : | |
| SALTZ, MONGELUZZI, & BENDESKY, P.C., | : | |
| | : | |
| Defendant. | : | |
| | : | |

_____ :

**<u>DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 2

LEGAL STANDARD .................................................................................................... 4

ARGUMENT ................................................................................................................. 5

    A.    Plaintiff's Claims Are Time-Barred ............................................................ 5

        1.    Plaintiff's Title VII Claims Regarding Mr. Nater and Mr. Jasinski Are Untimely ............................................................................ 5

        2.    Plaintiff's PHRA Claims Are Untimely .................................... 6

    B.    Plaintiff's Discrimination/Hostile Work Environment Claims Should Be Dismissed Because She Does Not Plausibly Allege Severe or Pervasive Conduct Or *Respondeat Superior* Liability ........................................... 7

        1.    Plaintiff Fails to Allege Severe or Pervasive Conduct ............. 8

        2.    Plaintiff Fails to Plead A Basis For *Respondeat Superior* Liability ........ 10

    C.    Plaintiff's Retaliation Claims Should Be Dismissed Because She Does Not Plausibly Allege She Suffered Any Adverse Employment Action ..................... 11

    D.    Plaintiff's Constructive Discharge Claim Should Be Dismissed Because She Does Not Plausibly Allege Her Workplace Was Objectively Intolerable .......................................................................................... 14

CONCLUSION ............................................................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Ahnert v. Lehigh Valley Health Network*,
    No. 24-cv-2561, 2025 WL 1194481 (E.D. Pa. Apr. 24, 2025)................................................15

*Alers v. City of Phila.*,
    919 F. Supp. 2d 528 (E.D. Pa. 2013) ...................................................................14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................4, 5

*Barbosa v. Tribune Co.*,
    No. 01-cv-1262, 2003 WL 22238984 (E.D. Pa. Sept. 25, 2003)...................................8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................4, 15

*Burlington Northern & Santa Fe Ry. v. White*,
    548 U.S. 53 (2006)...................................................................12, 13

*Chandler v. La-Z-Boy, Inc.*,
    No. 5:21-cv-05101, 2022 WL 348169 (E.D. Pa. Feb. 4, 2022).........................................8, 15

*Cherkasky v. Boyertown Area Sch. Dist.*,
    No. 5:21-cv-5204, 2022 WL 612070 (E.D. Pa. Mar. 2, 2022) ....................................13

*David v. Neumann Univ.*,
    187 F. Supp. 3d 554 (E.D. Pa. 2016) ...................................................................4

*Dodd v. SEPTA*,
    No. 06-cv-4213, 2008 WL 2902618 (E.D. Pa. July 24, 2008) ....................................14

*Doe v. New Castle Cnty.*,
    No. 23-cv-3190, 2024 WL 4719143 (3d Cir. Nov. 8, 2024) ....................................11

*Faragher v. City of Boca Raton*,
    524 U.S. 775 (1998)...................................................................7, 8, 9

*Fogleman v. Mercy Hosp.*,
    283 F.3d 561 (3d Cir. 2002)...................................................................11

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009)...................................................................4

*Harris v. Forklift Sys., Inc.*,
510 U.S. 17 (1993)..............................................................................................7

*Henry v. City of Allentown*,
No. 12-cv-1380, 2013 WL 81394 (E.D. Pa. Jan. 7, 2013)......................................13

*Hoover v. Beacon Container Corp.*,
No. 5:23-cv-04630, 2024 WL 2392999 (E.D. Pa. May 23, 2024)............................8

*Huston v. Procter &Gamble Paper Prods. Corp.*,
568 F.3d 100 (3d Cir. 2009)................................................................................10

*James v. City of Wilkes-Barre*,
700 F.3d 675 (3d Cir. 2012)..........................................................................4, 15

*Jennings-Fowler v. City of Scranton*,
680 F. App'x 112 (3d Cir. 2017) ..........................................................................7

*Kunin v. Sears Roebuck & Co.*,
175 F.3d 289 (3d Cir. 1999)................................................................................10

*Lebofsky v. City of Phila.*,
394 F. App'x 935 (3d Cir. 2010) .........................................................................14

*Mandel v. M & Q Packaging Corp.*,
706 F.3d 157 (3d Cir. 2013)............................................................................5, 7

*Meritor Sav. Bank FSB v. Vinson*,
477 U.S. 57 (1986)..............................................................................................7

*Moore v. City of Phila.*,
461 F.3d 331 (3d Cir. 2006)...........................................................................11, 12

*Nat'l R.R. Passenger Corp. v. Morgan*,
536 U.S. 101 (2002)..............................................................................................5

*Pa. State Police v. Suders*,
542 U.S. 129 (2004)............................................................................................14

*Papasan v. Allain*,
478 U.S. 265 (1986)..............................................................................................4

*Roadman v. Select Specialty Hosp.*,
No. 3:16-cv-246, 2017 WL 4236581 (W.D. Pa. Sept. 22, 2017) ...........................16

*Ryan v. Gen. Mach. Prods.*,
277 F. Supp. 2d 585 (E.D. Pa. 2003) .....................................................................6

*Satterfield v. Consol Pa. Coal Co*.,
   No. 06-cv-1262, 2007 WL 2728541 (W.D. Pa. Sept. 17, 2007)...............................................12

*Sousa v. Amazon.com, Inc*.,
   No. 1:21-cv-717, 2022 WL 4548910 (D. Del. Sept. 29, 2022), *aff'd*, No. 22-cv-3043, 2023
   WL 7486751 (3d Cir. Nov. 13, 2023)................................................................................7, 9

*Spencer v. Wal-Mart Stores, Inc*.,
   469 F.3d 311 (3d Cir. 2006)...........................................................................................14

*Tarr v. FedEx Ground*,
   398 F. App'x 815 (3d Cir. 2010) .......................................................................................13

*Trevizo v. Del Toro*,
   No. 1:23-cv-00508, 2025 WL 260309 (M.D. Pa. Jan. 21, 2025) .............................................9

## STATUTES

43 Pa. Cons. Stat. Ann. § 959 ...........................................................................................6

42 U.S.C. § 2000e-5...........................................................................................................5

## <u>INTRODUCTION</u>

Plaintiff Yanez Perez ("Plaintiff") asserts four counts alleging various theories of race and sex discrimination, hostile work environment, retaliation, and constructive discharge against Defendant Saltz, Mongeluzzi, & Bendesky, P.C. ("SMB"). Even accepting her most far-fetched allegations as true for purposes of this motion, Plaintiff's claims fall woefully short, and the Complaint should be dismissed in its entirety.

***First***, the Court should dismiss Plaintiff's Title VII hostile work environment and retaliation claims stemming from conduct in 2022 and Plaintiff's PHRA claims because they are untimely. ***Second***, Plaintiff's hostile work environment claims fail because they are based solely on isolated incidents and offhand comments that do not satisfy the severe or pervasive pleading standard. Moreover, Plaintiff concedes that SMB either promptly investigated and remedied Plaintiff's reported concerns about her non-managerial co-workers or that SMB was not on notice of the alleged harassing conduct. ***Third***, the retaliation claims are deficient because Plaintiff does not plead that she suffered from an adverse employment action as a result of any protected activity. And ***fourth***, Plaintiff's constructive discharge claim is based solely on conclusory, non-substantive allegations. Plaintiff has not alleged any facts suggesting that her employment with SMB became so intolerable that a reasonable person would resign under similar circumstances.

For these reasons, as set forth more fully below, SMB respectfully requests that this Court dismiss Plaintiff's Complaint with prejudice.

## FACTUAL BACKGROUND[1]

Plaintiff was hired by SMB as a legal assistant in August 2022 and worked in the firm's Philadelphia office.  Compl. ¶¶ 10, 13.  She remained in that role until she resigned on October 25, 2023.  Compl. ¶ 68.  Plaintiff is Afro-Latina.  Compl. ¶ 8.

Plaintiff alleges that on October 7, 2022, she complained to SMB's Human Resources Department that a co-worker, William Nater, inappropriately said, "You might as well just have a daughter because she's gonna get fucked the same way."  Compl. ¶¶ 17-19.  SMB promptly investigated Plaintiff's concerns, confirmed that Mr. Nater made the referenced comment, and immediately terminated Mr. Nater's employment.  Compl. ¶ 20.

Plaintiff next alleges that between October and November 2022, her co-worker Matthew Jasinski, IT Analyst, made several comments that she perceived as inappropriate and racially motivated.  Compl. ¶¶ 23-35.  Plaintiff also contends that after Mr. Jasinski moved to a different floor of the building in January 2023, he rearranged items on her desk.  Compl. ¶¶ 36-37.  Plaintiff did *not* report Mr. Jasinski's alleged conduct to SMB, however, because she did not want to "rock the boat."  Compl. ¶¶ 22, 31.

Plaintiff also alleges that in May 2023, Sophia Kilmer, an Associate, made her uncomfortable, by discussing her (Ms. Kilmer's) appearance, discussing places she frequented socially, and sharing details about her marriage and dating life.  Compl. ¶¶ 40-41.  Plaintiff further alleges that on May 19, 2023, Ms. Kilmer encouraged Plaintiff to accept free concert tickets and then invited Plaintiff to attend the concert with her and their respective friends.  Compl. ¶¶ 42-45.  According to Plaintiff, Ms. Kilmer followed up by text message to encourage Plaintiff to attend

---

[1] SMB assumes the truth of the well-pleaded factual allegations in the Complaint solely for purposes of this Motion to Dismiss and does not concede that any of Plaintiff's allegations of SMB's unlawful conduct are in fact true.

the concert, but Plaintiff did not respond.  Compl. ¶¶ 46-50.  Finally, Plaintiff alleges that two weeks later, Ms. Kilmer approached her and "flirtatiously stated, 'you look cute.'"  Compl. ¶ 54.  Plaintiff alleges that she reported Ms. Kilmer's conduct to SMB's Human Resources Manager on June 16, 2023.  The Human Resources Manager immediately investigated Plaintiff's concerns and assured Plaintiff that she would face no retaliation as a result of her complaint.  Compl. ¶¶ 55-57.

In July 2023, SMB received an employee complaint contending that Plaintiff was in a romantic relationship with her supervising attorney.  Compl. ¶¶ 58-59.  Plaintiff alleges that SMB investigated the complaint and interviewed witnesses, including Plaintiff.  Compl. ¶¶ 59-60.  Plaintiff states that she denied the allegations and "emphasized her belief that the false report was lodged in retaliation for her complaint against Ms. Kilmer."  Compl. ¶ 61.  Plaintiff further alleges that one week later, she received an email from a legal assistant, stating "[Plaintiff] throws others under the bus."  Compl. ¶ 62.

On July 25, 2023, Plaintiff emailed SMB's Chief Operating Officer and Human Resources Manager and requested a medical leave of absence.  SMB approved the request.  Compl. ¶¶ 64-66.  In the same email, Plaintiff raised her concerns about Ms. Kilmer's alleged "sexually inappropriate behavior" and stated that the "false allegation of a romantic relationship with Mr. Veloski and the recent email exchange with [the legal assistant] are retaliative," that SMB had a "discriminatory culture" where she was sexually harassed and "called a monkey by fellow staff and comments were made about the texture of [her] hair," and that she "[thought] both of those comments were racist."  Compl. ¶ 64.  Her email did not identify the "fellow staff" she claims made racist comments to her (Compl. ¶ 64), although it may have been a reference to the co-worker's comments from 2022, as referenced in Paragraphs 23 and 29 of the Complaint.

From July 24, 2023 through October 25, 2023, Plaintiff was out of work on a medical leave

of absence.  Compl. ¶¶ 67-68.  Instead of returning to work at the conclusion of her leave, however, Plaintiff resigned.  Compl. ¶¶ 67-68.  Plaintiff alleges that she was "unable to further endure Defendant SMB's discriminatory and retaliatory behavior" and was "constructively discharged" on October 25, 2023.  Compl. ¶¶ 68-69.

On February 14, 2024, Plaintiff dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC").  Compl. ¶ 5.  The EEOC issued a Notice of Right to Sue ("NRTS") on January 28, 2025.  Compl. ¶ 6.  Plaintiff filed her Complaint in this Court on April 27, 2025.  ECF No. 1.  She asserts claims for sex and race discrimination, hostile work environment, constructive discharge (Counts I and III), and retaliation (Counts II and IV) under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA").

## **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The complaint must "do more than allege the plaintiff's entitlement to relief"; it must "'show' such an entitlement with its facts."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  While the Court must "accept the factual allegations contained in the Complaint as true," the Court should "disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements."  *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012); *see also David v. Neumann Univ.*, 187 F. Supp. 3d 554, 557 (E.D. Pa. 2016) ("Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the Court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986))).  In sum, this pleading

standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

### A.    Plaintiff's Claims Are Time-Barred

*1.    Plaintiff's Title VII Claims Regarding Mr. Nater and Mr. Jasinski Are Untimely*

To assert timely discrimination/hostile work environment and retaliation claims under Title VII, Plaintiff first had to file a charge with the EEOC within 300 days of each alleged act of discrimination and/or retaliation.  42 U.S.C. § 2000e-5(e)(1).  For purposes of this inquiry, "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).  Plaintiff dual-filed her Charge with the EEOC and PHRA on February 14, 2024. Thus, Plaintiff's claims under Title VII (Counts I and II) are limited to acts occurring on or after April 20, 2023.

In support of her race-based hostile work environment claim, Plaintiff relies solely on alleged statements by her co-worker, Mr. Jasinski, between October and November 2022.  *See* Compl. ¶¶ 21-37.  Because she does not plead any factual allegations that could conceivably support a race-based hostile work environment occurring on or after April 20, 2023, her race-based hostile work environment claim is time-barred and should be dismissed.[2]

Plaintiff's sexual harassment claim based on a remark by another co-worker, Mr. Nater, is

---

[2] The "continuing violation doctrine" is inapplicable to Mr. Jasinski's alleged conduct because Plaintiff does not allege that Mr. Jasinski engaged in a single act of discrimination within the statute of limitations.  *See e.g.*, *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 166-167 (3d Cir. 2013) (the "continuing violation doctrine" only applies when there is a persistent, ongoing pattern of discrimination, not when isolated acts of discrimination are alleged; an employee must allege similar conduct, engaged in by the same individuals, to establish a persistent, ongoing pattern of discrimination).

similarly untimely. The allegedly offensive comment was made in October 2022—well over a year before Plaintiff filed her EEOC Charge. Compl. ¶ 17. Similarly, her related retaliation claim (that Mr. Jasinski made an offensive comment to her after she made the complaint about Mr. Nater) is also based on a comment allegedly made in October 2022 (Compl. ¶ 21) and, that too is time-barred.

In short, this Court should dismiss Plaintiff's Title VII race and sex discrimination/hostile work environment and retaliation claims stemming from events that allegedly occurred more than 300 days before February 14, 2024. *See, e.g.*, *Ryan v. Gen. Mach. Prods*., 277 F. Supp. 2d 585, 591 (E.D. Pa. 2003) (dismissing Title VII claims as time-barred).

2.    *Plaintiff's PHRA Claims Are Untimely*

The PHRA carries a shorter statute of limitations—Plaintiff was required to file administrative charges of discrimination within 180 days of each alleged act of discrimination or retaliation under the PHRA. 43 Pa. Cons. Stat. Ann. § 959(a)(h). Plaintiff filed her Charge on February 14, 2024. Thus, Plaintiff's PHRA claims (Counts III and IV) must be limited to acts occurring on or after August 18, 2023. But all of the conduct Plaintiff alleges in support of her PHRA claims occurred prior to August 2023, and, therefore, the PHRA claims should be dismissed as untimely. *See Gen. Mach. Prods*., 277 F. Supp. 2d at 591 (dismissing PHRA claims as time-barred). To the extent Plaintiff asserts that her constructive discharge claim is timely under the PHRA because she resigned in October 2023, such assertion is meritless. Plaintiff relies on no alleged discriminatory or harassing conduct that occurred after July 24, 2023, when she went on an approved medical leave of absence and never returned to work. And in any case, as discussed *infra*, Plaintiff's constructive discharge claim fails because it is based on mere labels and conclusory assertions, rather than substantive factual allegations.

Accordingly, Plaintiff's PHRA claims should be dismissed as time-barred.

**B.**     **Plaintiff's Discrimination/Hostile Work Environment Claims Should Be Dismissed Because She Does Not Plausibly Allege Severe or Pervasive Conduct Or *Respondeat Superior* Liability**

Plaintiff has not pleaded sufficient facts to support an actionable hostile work environment claim, for two primary reasons. First, she fails to plead facts sufficient to suggest severe or pervasive conduct. Second, she fails to plead facts sufficient to show *respondeat superior* liability for her co-workers' alleged harassment.

To establish a claim of sexual or racial harassment, Plaintiff must allege that: (1) she suffered intentional discrimination because of her sex or race; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (3) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) the existence of *respondeat superior* liability. *Mandel* 706 F.3d at 167.[3] With respect to the requisite severity or pervasiveness, such conduct must "alter the conditions of the [plaintiff's] employment and create an abusive working environment." *Meritor Sav. Bank FSB v. Vinson*, 477 U.S. 57, 67 (1986). "Pervasive means not just 'episodic,' but 'sufficiently continuous and concerted.'" *Sousa v. Amazon.com, Inc.*, No. 1:21-cv-717, 2022 WL 4548910, at *2 (D. Del. Sept. 29, 2022) (citation omitted), *aff'd*, No. 22-cv-3043, 2023 WL 7486751 (3d Cir. Nov. 13, 2023). Additionally, "simple teasing, offhand comments, and isolated incidents (unless extremely serious)" are not actionable harassment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation omitted). "[W]hether an environment is hostile or abusive can be determined only by looking at all the circumstances." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993) (citation omitted).

---

[3] Courts interpret hostile work environment claims asserted under the PHRA coextensively with Title VII claims. *See Jennings-Fowler v. City of Scranton*, 680 F. App'x 112, 117 (3d Cir. 2017).

### 1.  *Plaintiff Fails to Allege Severe or Pervasive Conduct*

Here, the alleged conduct by Mr. Nater, Mr. Jasinski, and Ms. Kilmer is isolated and episodic, and Plaintiff fails to allege how each incident was so extreme as to alter the conditions of her employment, impact her work performance, and create an abusive working environment on account of her race or sex.

First, Plaintiff's race-based hostile work environment claim does not offer sufficient factual support.  Plaintiff characterizes a series of alleged comments from a co-worker in 2022 as racially motivated.  *See* Compl. ¶¶ 21-36.  These alleged comments from a two-month period are not racial on their face, nor are they sufficiently severe or pervasive to support Plaintiff's claim.  *See, e.g.*, *Hoover v. Beacon Container Corp*., No. 5:23-cv-04630, 2024 WL 2392999, at *4 (E.D. Pa. May 23, 2024) (dismissing hostile work environment claim where one employee repeatedly called plaintiff a "bitch ass nigga" because the "sporadic and isolated comments of one employee cannot establish a hostile work environment based on race" and "Title VII is not a 'general civility code,' and instead is intended to target conduct so 'extreme to amount to a change in the terms and conditions of employment'") (quoting *Faragher*, 524 U.S. at 788));  *Chandler v. La-Z-Boy, Inc*., No. 5:21-cv-05101, 2022 WL 348169, at *4 (E.D. Pa. Feb. 4, 2022) (dismissing hostile work environment claim where it was based on an isolated and offhand "colored girl" comment, because while such comment was "undoubtedly offensive," "the fact that Plaintiff encountered an unpleasant isolated incident does not mean that the terms and conditions of Plaintiff's employment were altered");  *see also Barbosa v. Tribune Co*., No. 01-cv-1262, 2003 WL 22238984, at *3 (E.D. Pa. Sept. 25, 2003) ("For racist comments, slurs and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racist slurs, there must be a steady barrage of opprobrious racial comments.").

Second, Plaintiff's allegations in support of her sex-based hostile work environment claim fail to satisfy the requisite severe or pervasive pleading standard. Plaintiff alleges that Ms. Kilmer "sexually harassed" her by: (1) purportedly seeking Plaintiff's validation about her looks, discussing places she likes to frequent socially, and talking about her dating life (Compl. ¶ 41); (2) allegedly encouraging Plaintiff to accept free concert tickets, inviting Plaintiff to attend the concert with their respective friends, and following up via text (Compl. ¶¶ 42-50); and (3) telling Plaintiff that she looked cute (Compl. ¶ 54).[4]

These allegations do not plausibly suggest that Plaintiff was subjected to severe or pervasive sex discrimination that impacted her ability to do her job or otherwise altered her conditions of employment. *See, e.g.*, *Sousa*, 2023 WL 7486751, at *1, *3 (affirming dismissal of hostile work environment claim where appellant failed to sufficiently allege facts to support severe or pervasive sexual harassment, including where her supervisor made a series of advances toward her, such as sending appellant a photograph of himself, seeking her validation of his new haircut, suggesting they hang out outside of work socially, and calling her on at least fourteen separate days over the span of three months primarily to discuss personal matters and their dating lives— "We cannot say that . . . periodic comments and occasional late-night phone calls in which he sometimes inappropriately veered into [appellant's] personal life amounted to more than poor taste that is sometimes part of 'the ordinary tribulations of the workplace'") (*quoting Faragher*, 524 U.S. at 788); *Trevizo v. Del Toro*, No. 1:23-cv-00508, 2025 WL 260309, at *7 (M.D. Pa. Jan. 21, 2025) (dismissing hostile work environment claim where plaintiff did not sufficiently plead that the alleged vague and episodic conduct at issue was so severe or pervasive that it altered her

---

[4] Plaintiff also alleges that her co-worker Mr. Nater engaged in sexually harassing conduct on one occasion in October 2022 when he commented "You might as well just have a daughter because she's gonna get fucked the same way." Compl. ¶ 17.

conditions of employment).

      2.   *Plaintiff Fails to Plead A Basis For Respondeat Superior Liability*

Plaintiff's hostile work environment claims are based on alleged comments by her co-workers, and do not establish a basis for the imposition of *respondeat superior* liability. *Respondeat superior* liability for harassment by non-supervisory co-workers "exists only if the employer failed to provide a reasonable avenue for complaint or, alternatively, if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action." *Huston v. Procter &Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009). An employer should have known of the harassment if "[it] is so pervasive and open that a reasonable employer would have had to be aware of it[,]" or "an employee provides management level personnel with enough information to raise a probability of . . . harassment in the mind of a reasonable employer . . . ." *Kunin v. Sears Roebuck & Co*., 175 F.3d 289, 294 (3d Cir. 1999).

Plaintiff alleges that she utilized SMB's policy to address harassment and discrimination in the workplace by reporting workplace issues to Human Resources in October 2022 (regarding Mr. Nater) and June 2023 (regarding Ms. Kilmer). With respect to Mr. Nater's alleged conduct, Plaintiff admits that SMB immediately responded to Plaintiff's concerns and took appropriate remedial action. Compl. ¶ 20.

As for complaints about comments by Mr. Jasinski, Plaintiff concedes that she did not report any such concerns to the firm. Compl. ¶¶ 22, 31. At most, she referenced alleged racial harassment by unidentified "fellow staff" on July 25, 2023—when she went out on a leave of absence from which she never returned. Compl. ¶ 64. None of Plaintiff's allegations about Mr. Jasinski give rise to a plausible inference that SMB knew or should have known about his alleged racial harassment of Plaintiff, nor does Plaintiff allege that SMB failed to have a reasonable avenue

to complain about the alleged conduct.

Lastly, with regard to Ms. Kilmer, SMB immediately investigated Plaintiff's concerns when she raised them in June 2023. Compl. ¶¶ 55-57. Plaintiff does not allege that SMB's actions were ineffective at stopping the allegedly offending conduct; indeed, the Complaint is devoid of any allegation that Ms. Kilmer engaged in any additional offending conduct after Plaintiff complained. As such, Plaintiff's allegations fall short of sufficiently pleading *respondeat superior* liability. *See, e.g.*, *Doe v. New Castle Cnty.*, No. 23-cv-3190, 2024 WL 4719143, at *2 (3d Cir. Nov. 8, 2024) (affirming dismissal of hostile work environment claim for failure to plead *respondeat superior* liability where the appellant's allegations did not give rise to a plausible inference that the employer knew or should have known of the alleged conduct, plaintiff admitted he did not report the conduct because he thought it was futile, and once the employer learned of the conduct, it immediately investigated it and took remedial action).

Given that Plaintiff does not plausibly allege severe or pervasive conduct or *respondeat superior* liability, her hostile work environment claims should be dismissed.

**C.    Plaintiff's Retaliation Claims Should Be Dismissed Because She Does Not Plausibly Allege She Suffered Any Adverse Employment Action**

Plaintiff fails to state a claim for retaliation because she does not allege that SMB subjected her to any adverse employment action in response to her alleged protected activity. To state a claim for retaliation, Plaintiff must establish that: (1) she engaged in a protected activity; (2) SMB contemporaneously or subsequently subjected her to an adverse action; and (3) the protected activity and the adverse action are causally linked. *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006).[5] To satisfy the adverse employment action prong of her retaliation claim,

---

[5] Courts interpret retaliation claims asserted under the PHRA coextensively with Title VII claims *See Fogleman v. Mercy Hosp.*, 283 F.3d 561, 567 (3d Cir. 2002) ("The language of the PHRA is .

Plaintiff "must show that a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 341 (*quoting Burlington Northern & Santa Fe Ry. v. White.*, 548 U.S. 53, 57 (2006)). Moreover, "[Title VII's] antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington*, 548 U.S. at 67. An action is materially adverse when it is a "significant" rather than a "trivial" harm—"[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* at 68.

Here, in support of her retaliation claim, Plaintiff alleges that: (1) her co-worker Mr. Jasinski retaliated against her in October 2022 for making a complaint about Mr. Nater by "mimicking finger guns with his hands and stating, 'you're getting people fired around here'" (Compl. ¶ 21); (2) she received an email from her co-worker legal assistant in July 2023 stating, "[Plaintiff] throws others under the bus" (Compl. ¶ 62); and (3) SMB investigated a complaint in July 2023 that Plaintiff was engaged in a romantic relationship with her supervisor (Compl. ¶ 61). None of these incidents constitute an adverse employment action. Plaintiff fails to allege how they produced any injury or harm, impacted her employment, or were otherwise serious enough to dissuade her from raising a charge of discrimination. *See Satterfield v. Consol Pa. Coal Co.*, No. 06-cv-1262, 2007 WL 2728541, at *6 (W.D. Pa. Sept. 17, 2007) (dismissing plaintiff's retaliation claim based on a co-worker's comment "[g]o ahead and sue me. I will gladly go to court" because "no reasonable finder of fact could conclude that a *reasonable* employee would

---

. . substantially similar to [Title VII and other federal] anti-retaliation provisions, and we have held that the PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different . . . .").

be dissuaded from pursuing a charge of discrimination merely because another employee (who is not a superior) makes [such comment] and for which he was not disciplined") (emphasis in original); *Cherkasky v. Boyertown Area Sch. Dist.*, No. 5:21-cv-5204, 2022 WL 612070, at *6-7 (E.D. Pa. Mar. 2, 2022) (granting employer's motion to dismiss retaliation claim where plaintiff alleged that employees stopped being nice to her and shunned her after she made several complaints because "'petty slights, minor annoyances, and simple lack of good manners' does not constitute retaliation as a matter of law" and because plaintiff failed to allege that her employer took any actions that prevented her professional advancement) (quoting *Burlington*, 548 U.S. at 68); *Henry v. City of Allentown*, No. 12-cv-1380, 2013 WL 81394, at *4 (E.D. Pa. Jan. 7, 2013) (dismissing plaintiff's retaliation claim where plaintiff alleged defendant sent text messages in which he ridiculed plaintiff's accommodation request and indicated that he harbored an animus against employees with disabilities because plaintiff identified no injury or harm resulting from the messages).

Nor does SMB's investigation into another employee's complaint that Plaintiff and her supervisor were engaged in an inappropriate romantic relationship constitute an adverse employment action. SMB had a duty to investigate such a complaint and Plaintiff does not allege that the investigation had any negative effect on the terms or conditions of her employment or that she was disciplined in any way. Courts have held that investigations, separate from any negative consequences that may result from them, do not generally constitute adverse employment actions as a matter of law. *See, e.g.*, *Tarr v. FedEx Ground*, 398 F. App'x 815, 821 (3d Cir. 2010) (finding that the employer's investigation into an inconsistency in employee's job application did not constitute an adverse employment action in retaliation for the employee's complaint to Human Resources about alleged harassment where the investigation was closed, no

further action was taken, and the investigation did not cause him any harm); *Alers v. City of Phila.*, 919 F. Supp. 2d 528, 549 (E.D. Pa. 2013) (finding that disciplinary investigation that resulted in no material injury, harm, or discipline to employee was not an adverse employment action for purposes of Title VII retaliation claim); *Dodd v. SEPTA*, No. 06-cv-4213, 2008 WL 2902618, at *14 (E.D. Pa. July 24, 2008) (finding that an internal investigation was not an adverse action for purposes of plaintiff's retaliation claims—"the investigation alone is nothing more than what is to be expected following allegations of institutional misconduct. Indeed, it arguably would have been reprehensible had [defendant] ignored the allegations of discriminatory and unlawful conduct"). Accordingly, Plaintiff's retaliation claims should be dismissed in their entirety.

**D.    Plaintiff's Constructive Discharge Claim Should Be Dismissed Because She Does Not Plausibly Allege Her Workplace Was Objectively Intolerable**

Plaintiff's constructive discharge claim lacks any plausible factual basis and should be dismissed. To establish a hostile-environment constructive discharge claim, Plaintiff must make an additional showing beyond establishing that SMB subjected her to a hostile work environment—she must also establish that she was subjected to "working conditions so intolerable that a reasonable person would have felt compelled to resign." *Pa. State Police v. Suders*, 542 U.S. 129, 133-134, 147 (2004). Constructive discharge requires a "greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 317 n.4 (3d Cir. 2006)). The Third Circuit has held that factors tending to show constructive discharge include: "(1) threat of discharge; (2) suggesting or encouraging resignation; (3) a demotion or reduction of pay or benefits; (4) involuntary transfer to a less desirable position; (5) alteration of job responsibilities; and (6) unsatisfactory job evaluations." *Lebofsky v. City of Phila.*, 394 F. App'x 935, 939 (3d Cir. 2010). The Complaint contains no such allegations.

-14-

Even accepting her allegations as true, and drawing all reasonable inferences in her favor, Plaintiff fails to allege sufficient facts in support of her claim, and instead relies solely on her conclusory assertion that she was constructively discharged.  Plaintiff began a medical leave of absence on July 24, 2023 and remained out until her October 25, 2023 resignation.  Compl. ¶¶ 67-69.  Plaintiff pleads no facts suggesting that she could not return to her position, or that her working conditions had become so intolerable that a reasonable person subject to them would resign. Plaintiff cannot base her constructive discharge claim on a mere conclusory allegation that she was constructively discharged.  *See City of Wilkes-Barre*, 700 F.3d at 679 (noting that the Court should "disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements"); *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions[.]").

Moreover, as discussed *supra*, Plaintiff's hostile work environment claims are rooted in alleged offhand and isolated incidents that occurred several months prior to her medical leave, and she does not allege that she experienced any additional harassment from Mr. Jasinski after January 2023 or Ms. Kilmer after late May 2023—several months before she went on medical leave on July 24, 2023.  Yet she claims she was constructively discharged on October 25, 2023.  Setting aside her conclusory generalizations, as this Court must do, it is quite clear that Plaintiff has failed to allege a level of severity and pervasiveness to make out a claim for hostile work environment, let alone a more difficult claim for constructive discharge.  *See Ahnert v. Lehigh Valley Health Network*, No. 24-cv-2561, 2025 WL 1194481, at *9 (E.D. Pa. Apr. 24, 2025) (dismissing plaintiff's constructive discharge claim where plaintiff failed to plausibly allege a hostile work environment claim based on the same allegations);  *Chandler*, 2022 WL 348169, at *3 (dismissing plaintiff's hostile-environment constructive discharge claim where it was based on an offhand isolated

comment that did not rise to the "sort of extremely serious comment that would otherwise support a constructive discharge claim" (citations omitted)); *see also Roadman v. Select Specialty Hosp.*, No. 3:16-cv-246, 2017 WL 4236581, at *5 (W.D. Pa. Sept. 22, 2017) (dismissing constructive discharge claim where plaintiff's allegations—that another employee grabbed and touched her and made demands for romantic encounters—did not rise to the greater level of severity and pervasiveness required for a constructive discharge claim, and she did not allege that after she reported the conduct, she experienced any further instances of harassment or suffered any alterations to the terms and conditions of her employment to compel her to resign).

Plaintiff's constructive discharge allegations should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss Plaintiff's Complaint, in full, with prejudice.

Dated: July 2, 2025                          MORGAN, LEWIS & BOCKIUS LLP

By:  */s/ Michael L. Banks*

Michael L. Banks (PA Bar No. 35052)
A. Klair Fitzpatrick (PA Bar No. 309329)
Catherine S. Houseman (PA Bar No. 328740)
2222 Market Street
Philadelphia, PA  19103-3007
+1.215.963.5000
michael.banks@morganlewis.com
klair.fitzpatrick@morganlewis.com
cait.houseman@morganlewis.com

*Counsel for Defendant Saltz, Mongeluzzi, & Bendesky, P.C.*

## **CERTIFICATE OF SERVICE**

I, Michael L. Banks, hereby certify that on this 2nd day of July, 2025, a true and correct copy of the foregoing Defendant's Motion to Dismiss Plaintiff's Complaint and Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's Complaint was electronically filed and is available for viewing and downloading from the Court's ECF system.

*/s/ Michael L. Banks*
Michael L. Banks