IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| _____ : | | |
| YANEZ PEREZ, : | | |
| Plaintiff, : | | |
| : | | Case No. 2:25-cv-02107-MKC |
| v. : | | |
| : | | |
| SALTZ, MONGELUZZI, & BENDESKY, P.C., : | | |
| : | | |
| Defendant. : | | |
| : | | |
| _____: | | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**PHILLIPS & ASSOCIATES, PLLC**
*Attorneys for Plaintiff*
45 Broadway, 28th Floor
New York, NY 10006
(212) 248-7431

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTORITIES**…………………………………………………………………i

**PRELIMINARY STATEMENT**…………………………………………………………… 1

**STATEMENT OF FACTS**…………………………………………………………………1

**STANDARD OF REVIEW**………………………………………………………………...7

**LEGAL ARGUMENT**……………………………………………………………...........9

    **I.**     **Plaintiff's Title VII Claims Are Timely**……………………………………9

    **II.**    **Plaintiff's PHRA Claims Are Timely**……………………………………11

    **III.**   **Plaintiff Established a Prima Facie Case of Discrimination and Hostile Work Environment**…………………………………………………………...12

    **IV.**   **Plaintiff Has Established a Prima Facie Case of Retaliation**……………………16

    **V.**    **Plaintiff Was Constructively Discharged**…………………………………17

    **VI.**   **Should The Court Grant Any Part of Defendant SMB's Motion, Plaintiff Requests Leave to Amend the Complaint**…………………………………18

    **CONCLUSION**…………………………………………………………………19

# **TABLE OF AUTHORITIES**

<u>Cases</u>

*Abramson v. William Paterson Coll. Of N.J.*, 260 F.3d 265 (3d Cir. 2001)……………………..16

*Andrews v. Philadelphia*, 895 F.2d 1469 (3d Cir. 1990)…………………………………………...17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) …………………………………………………………...8

*Baldini v. Cnty. of Delaware*, 2024 U.S. Dist. LEXIS 118814 (E.D. Pa. Jul. 8, 2024) …………..8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) …………………………………………8

*Bookhart v. Tri-Cnty. OIC*, 2025 U.S. Dist. LEXIS 94505 (M.D. Pa. May 19, 2025) …………13

*Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283 (3d Cir. 1991)
………………………………………………………………………………………………………10

*Carswell v. Monumental Life Ins. Co.*, 2014 U.S. Dist. LEXIS 93329 (W.D. Pa. July 9, 2014)
………………………………………………………………………………………………..17, 18

*Castleberry v. STI Grp.*, 863 F.3d 259 (3d Cir. 2017) …………………………………………..13

*Clark County Sch. Dist. v. Breeden,* 532 U.S. 268 (2001) …………………………………..13, 16

*Cowell v. Palmer Twp.*, 263 F.3d 286 (3d Cir. 2001) …………………………………………….9

*Doe v. New Castle Cnty.*, 2024 U.S. App. LEXIS 28419 (3d Cir. Nov. 8, 2024) ……………….7

*Duffy v. Paper Magic Group, Inc.*, 265 F.3d 163 (3d Cir. 2001) ………………………………17

*Durham Life Ins. Co. v. Evans*, 166 F.3d 139 (3d Cir. 1999) …………………………………...15

*Ellingsworth v. Hartford Fire Ins. Co.*, 247 F. Supp. 3d 546 (E.D. Pa. 2017) …………………11

*Fedder v. Bloomsburg Univ. of Pa.*, 2024 U.S. Dist. LEXIS 2531 (M.D. Pa. Feb. 13, 2024) ….13

*Foman v. Davis*, 371 U.S. 178 (1962) …………………………………………………………...18

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) ……………………………………...8, 12

*Green v. Brennan*, 136 S. Ct. 1769 (2016) ……………………………………………………...12

*Harris v. Forklift Sys.*, Inc., 510 U.S. 17 (1993) ………………………………………….…13, 17

i

*Hill v. Borough of Kutztown*, 455 F.3d 225 (3d Cir. 2006) ……………………………………11, 17

*Hummel v. JH Cornelia*, LLC, 2023 U.S. Dist. LEXIS 71583 (E.D. Pa. Apr. 25, 2023) ………18

*Hudak v. United States Postal Serv.*, 1994 U.S. Dist. LEXIS 1442 (E.D. Pa. Feb. 15, 1994)…..18

*In re Rockefeller Center Properties*, Inc., 311 F.3d 198 (3d Cir. 2002) …………………………8

*Kunin v. Sears Roebuck & Co.*, 175 F.3d 289 (3d Cir. 1999) …………………………………..12

*Leblanc v. Hill Sch.*, 2015 U.S. Dist. LEXIS 2981 (E.D. Pa. Jan. 12, 2015) …………………...15

*Leonard v. SEPTA*, 2021 U.S. Dist. LEXIS 11946 (E.D. Pa. Jan. 22, 2021) ………………...9, 10

*Magerr v. City of Philadelphia*, 2016 U.S. Dist. LEXIS 48177 (E.D. Pa. Apr. 11, 2016) …15, 16

*Malleus v. George*, 641 F.3d 560 (3d Cir. 2011) ………………………………………………8

*Mandel v. M & Q Packaging Corp.*, 706 F.3d 157 (3d Cir. 2013) …………………………….9

*Mieczkowski v. York City Sch. Dist.*, 414 Fed. Appx. 441 (3d Cir. 2011) ………………………11

*Moore v. City of Philadelphia*, 462 F.3d 331 (3d Cir. 2006) …………………………………16

*Naranjo v. Unit Manager Coulehan*, 2024 U.S. Dist. LEXIS 214797 (W.D. Pa. Nov. 26, 2024) ……………………………………………………………………………………………………18

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ……………………………………9

*Pallatto v. Westmorland County Children's Bureau*, 2014 U.S. Dist. LEXIS 27008 (W.D. Pa. Mar. 3, 2014) ……………………………………………………………………………………17

*Pa. State Police v. Suders*, 542 U.S. 129 (2004) ………………………………………………...17

*Phillips v. Cty. of Allegheny,* 515 F.3d 224 (3d Cir. 2008) ……………………………………….7

*Roberson v. Barretts Bus. Servs.*, 2019 U.S. Dist. LEXIS 150327 (D. Del. Sept. 4, 2019) ……………………………………………………………………………………………...12, 13

*Rosh v. Gold Std. Café at Penn, Inc.*, 2016 U.S. Dist. LEXIS 175592 (E.D. Pa. Dec. 19, 2016) ……………………………………………………………………………………………………14

*West v. Philadelphia Elec. Co.*, 45 F.3d 744 (3d Cir. 1995) ……………………………………...9

*Weston v. Pennsylvania*, 251 F.3d 420 (3d Cir. 2001) …………………………………………12

Statutes and Regulations

42 U.S.C. §§ 2000e-2(a)(1), *et seq.* …………………………………………………9, 12, 16

43 Pa. Cons. Stat. Ann. § 959(a) …………………………………………………...11

Fed. R. Civ. P. 15……………………………………………………………………18

## PRELIMINARY STATEMENT

Plaintiff,  by and through her attorneys, respectfully submits this Memorandum of Law in Opposition to Defendant Saltz, Mongeluzzi & Bendesky's ("SMB") Motion to Dismiss. Defendant SMB's Motion should be denied in its entirety.  First, Plaintiff's claims are timely. Second, Plaintiff has established *prima facie* case of discrimination and hostile work environment. Third, Plaintiff has established a *prima facie* case of retaliation.  Fourth, Plaintiff has established a constructive discharge.  Finally, Defendant SMB provides only a superficial analysis of the issues, which are fact-dependent, disputed, and cannot be resolved without discovery, making them inappropriate to decide at the motion to dismiss stage.

## STATEMENT OF FACTS

On or about August 8, 2022, Plaintiff began working for Defendant SMB as a Paralegal, with an annual salary of $70,000.  (Compl. ¶ 13).  Plaintiff's responsibilities were mainly clerical in nature.  However, she was also in charge of discovery motions for her team, as well as other administrative and financial responsibilities.  (Compl. ¶ 14).  Throughout her employment, Plaintiff was a dedicated and reliable employee who performed all of her duties without issue. (Compl. ¶ 15).  Plaintiff was the only Afro-Latina on her team and at the firm.  (Compl. ¶ 16).

On or about October 6, 2022, Plaintiff was having a conversation with a co-worker about the birth of twins, during which she noted that she could envision having a son and daughter herself one day.  File Clerk, William Nater, then randomly joined in, stating, "**You might as well just have a daughter because she's gonna get fucked the same way**."  (Compl. ¶ 17).  Crucially, Mr. Nater's statements were vulgar, deeply degrading, and laced with gender-based animus and hostility toward women.  (Compl. ¶ 18).  The next day, Plaintiff reported Mr. Nater's discriminatory comment to Human Resources ("HR") in writing.  (Compl. ¶ 19).  As a result, on

or about October 8, 2022, Mr. Nater was terminated for his inappropriate remarks.  (Compl. ¶ 20).

**That same day**, **in retaliation for her complaint**, IT Analyst, **Matthew Jasinski, mocked Plaintiff for reporting Mr**. **Nater by mimicking finger guns with his hands and stating, "you're getting people fired around here**." (Compl. ¶ 21).  Through this statement, Mr. Jasinski made clear that complaints of discrimination were unwelcome at Defendant SMB. (Compl. ¶ 21). Therefore, because she was a new employee, believed Mr. Jasinski was her superior, and was fearful of losing her position, Plaintiff did not report Mr. Jasinski's retaliatory comment.  (Compl. ¶ 22).

However, later that month, **Mr. Jasinski told Plaintiff that her curly hair looked like "Curly Sue" and like "she stuck her finger in a socket," implying that Afro-Latina textured hair was "messy" or "unkempt"** compared to Caucasian hair.  (Compl. ¶ 23).  Mr. Jasinski then raised one hand above his head and, looking directly at Plaintiff, stated, "I'm here." (Compl. ¶ 24). Immediately after, Mr. Jasinski lowered his other hand beneath the first and stated, "**You're there. I'm better than you**." (Compl. ¶ 24).  Given that Mr. Jasinski was Caucasian and Plaintiff was Afro-Latina, Plaintiff perceived this comment as carrying an undeniable racial undertone.  (Compl. ¶ 25).

In further harassment, on or about October 12, 2022, Mr. Jasinski (Caucasian) injected "**you people always get drafted first**," referring to Plaintiff's race, in response to a conversation Plaintiff was having with coworker, Jennifer Guy, about a sports draft pick.  (Compl. ¶ 26). Plaintiff reasonably believed that Mr. Jasinski's use of the phrase "you people" was intended to exclude and categorize people of color, such as her, as "other" or "lesser than."  (Compl. ¶ 27).

As another example, a few days later, Mr. Jasinski randomly approached Plaintiff and, without provocation, remarked, "What are those, stripper shoes? I know what you'd be into,"

reinforcing harmful racial stereotypes about Afro-Latina women and implying that Plaintiff dressed or behaved inappropriately. (Compl. ¶ 28).

Later that month, Mr. Jasinski became frustrated with a question Plaintiff had asked regarding the IT system, and loudly stated, "Why are you not comprehending what I'm saying to you? It is very simple." (Compl. ¶ 29). Despite Mr. Jasinski's patronizing and misogynistic tone, *Plaintiff* apologized and remarked that the IT system was confusing. Mr. Jasinski then said, "**You would say that**…**If you weren't a monkey you would understand**." (Compl. ¶ 29). Given the well-known racist stereotype comparing Black people to monkeys, Plaintiff reasonably believed that Mr. Jasinksi's use of the word "monkey" was directly related to her being Afro-Latina. (Compl. ¶ 30). Nevertheless, Plaintiff did not complain about Mr. Jasinski's discriminatory remarks due to his tenure with the firm, and because she did not want to "rock the boat." (Compl. ¶ 31). As a result, she continued to endure discrimination. (Compl. ¶ 32).

For example, throughout October 2022, Mr. Jasinski repeatedly invoked Defendant SMB's "hierarchy" when speaking to Plaintiff, using a condescending and threatening tone to assert his perceived superiority. (Compl. ¶ 33). Specifically, Mr. Jasinski regularly emphasized that his longer tenure at Defendant SMB placed him above Plaintiff, implicitly reinforcing a power imbalance and further marginalizing her as a newer Afro-Latina employee. (Compl. ¶ 33).

In or around late November 2022, Plaintiff arrived at her desk to find a steak knife placed beside a note. (Compl. ¶ 34). The note, which Plaintiff had originally written to herself as a positive affirmation reading "[Plaintiff] is awesome," had been altered to say "[**Plaintiff**] **is NOT awesome**." (Compl. ¶ 34). Several moments later, Mr. Jasinski approached Plaintiff and taunted her by saying, "**What are you gonna do? Go run and tell?**" (Compl. ¶ 35). Given the timing of his comment and his ongoing pattern of harassment, Plaintiff reasonably believed that Mr. Jasinski

was the one who had placed the steak knife on her desk and altered her note.  (Compl. ¶ 35).  Mr. Jasinski's statement was clearly intended to intimidate Plaintiff and discourage her from reporting his ongoing harassment.  (Compl. ¶ 35).

In or around January 2023, Mr. Jasinski began working on a different floor of Defendant SMB.  (Compl. ¶ 36).  While Plaintiff assumed she would not see much of Mr. Jasinski due to his change of work location, Mr. Jasinski made it a point to continue his harassment toward Plaintiff, regularly rearranging items on her desk.  (Compl. ¶ 37).

Then, in or around May of 2023, Plaintiff's supervisor, Attorney Ryane Sophia Kilmer (a transgender woman) began subjecting Plaintiff to unwanted and inappropriate sexual advances. (Compl. ¶ 38).  For context, while Plaintiff and Ms. Kilmer's communications had always been cordial and professional, Plaintiff did not consider Ms. Kilmer a friend outside of work.  (Compl. ¶ 39).  Throughout May of 2023, Ms. Kilmer regularly summoned Plaintiff to her office under the pretext of reviewing completed assignments, but would instead shift the focus of their interactions to her personal life and appearance.  (Compl. ¶ 40).  During these encounters, Ms. Kilmer frequently sought validation about her looks, discussed places she frequented socially, and shared details about leaving her wife and reentering the dating scene.  (Compl. ¶ 41).  As a result, Plaintiff felt that the meetings were rarely about work, leaving her uncomfortable and undermining the professional nature of their interactions.  (Compl. ¶ 41).  Nevertheless, on or about May 19, 2023, Ms. Kilmer sent a text message to Plaintiff's personal phone stating, "Hey, this is Sophia." (Compl. ¶ 42).  Plaintiff did not immediately notice the message, and at no point prior had she expressed any interest in socializing with Ms. Kilmer outside of work.  (Compl. ¶ 42).

Later that day, Ms. Kilmer approached Plaintiff's desk and said, "You should get those tickets and go with your friends," referring to four tickets that an attorney at Defendant SMB giving

away for a local winery event happening that evening. (Compl. ¶ 43). Plaintiff responded politely that she needed to finish her work, but did not express any desire to attend, nor did she indicate any willingness to accept the tickets. (Compl. ¶ 43). Despite Plaintiff's lack of interest, Ms. Kilmer returned to her desk two more times, pressing Plaintiff about whether she had taken the tickets. (Compl. ¶ 44). Plaintiff continued to refrain from accepting or encouraging the invitation. (Compl. ¶ 44).

Undeterred, Ms. Kilmer came back later that same day and announced, "**I got the tickets and we're going!**" (Compl. ¶ 45). Plaintiff, taken aback, responded, "We?" — making clear that she had never agreed to attend the event with Ms. Kilmer. (Compl. ¶ 45). Ms. Kilmer replied, "**I look cute, we look cute together**! I have a meeting after work, but I'll meet you there. Invite your friends and I'll ask who can come from mine. You better not bail on me." (Compl. ¶ 45).

Then, Ms. Kilmer approached Plaintiff's desk and stated, "I'm leaving to my event, **don't stand me up**. I'll text your phone." (Compl. ¶ 46). That afternoon, Ms. Kilmer texted Plaintiff "We should absolutely go to this concert. It will be fun and it's free. **Plus**, **I look super cute**. **We look super cute**. Lol we got our own table with the seats." (Compl. ¶ 47). While Plaintiff did not respond, Ms. Kilmer's sexually harassing behavior continued, as she messaged Plaintiff on her work and personal email approximately seventeen times inquiring whether she would be attending the event. (Compl. ¶ 48). Later that evening, Ms. Kilmer again texted Plaintiff multiple messages, stating "I should be able to meet you around 7:30," "You are still down to go right?," "Call me when you can," "I am planning on going tonight but I will be late," "I am there," and "Hit me up if you want to come otherwise have a nice weekend. I hope everything is OK." (Compl. ¶ 49). Plaintiff never accepted Ms. Kilmer's invitation. (Compl. ¶ 50).

Based on the above-described conduct, Plaintiff reasonably believed that Ms. Kilmer's

invitation to the winery event, in addition to her comments about her physical appearance were intended to determine her interest in a romantic and/or sexual relationship. (Compl. ¶ 51). Even so, fearing retaliation, Plaintiff did not immediately report Ms. Kilmer's sexual harassment because she was her supervisor. (Compl. ¶ 52). Consequently, Ms. Kilmer's sexually harassing behavior continued. (Compl. ¶ 53). For example, two weeks later, Ms. Kilmer approached Plaintiff and flirtatiously stated, "**you look cute**." (Compl. ¶ 54).

As a result, on or about June 16, 2023, Plaintiff reported all of Ms. Kilmer's above-referenced conduct to Defendant SMB's HR Department. (Compl. ¶ 55). Soon after, Defendant SMB's management met with Plaintiff and Ms. Kilmer individually. (Compl. ¶ 56). During the meeting, Plaintiff was assured she would face no retaliation as a result of her complaint. (Compl. ¶ 57).

However, on or about July 14, 2023, Plaintiff received an email from HR Representative, Jenny Boyer, asking Plaintiff to come into the office for a meeting the following day. (Compl. ¶ 58). During this meeting, Ms. Boyer informed Plaintiff that HR had received an email from an individual in the office alleging that Plaintiff and her Managing Attorney, Peter Veloski, were engaged in a romantic relationship. (Compl. ¶ 59). Here, HR informed Plaintiff that Mr. Veloski had already denied the allegations. (Compl. ¶ 60). Plaintiff also confirmed that these allegations were completely false and emphasized her belief that the false report was lodged in retaliation for her complaint against Ms. Kilmer. (Compl. ¶ 61). The following week, Plaintiff received an email from a Paralegal, Jennifer Suarez stating, "[Plaintiff] throws others under the bus." (Compl. ¶ 62).

As a result of the continued harassment and retaliation, Plaintiff suffered a severe anxiety attack and requested FMLA leave to obtain psychotherapy treatment. (Compl. ¶ 63).

Accordingly, on or about July 25, 2023, Plaintiff emailed Chief Operating Officer, Bradford Smith, and HR Manager, Jenny Boyer:

> "I took the day to converse with my therapist of the recent incidents at the firm and I would like to request a leave of absence due to the stability of my mental health. **After the submission of my letter regarding Ms. Kilmer's sexually inappropriate behavior, I find the false allegation of a romantic relationship with Mr. Veloski and the recent email exchange with Ms. Suarez are retaliative and thus have affected my mental health when ultimately my goal was to make the company aware of the misconduct from the Attorney who admittedly took responsibility. The discriminatory culture of this firm has really taken a toll on me. Besides being sexually harassed and then retaliated against, I was also called a monkey by fellow staff and comments were made about the texture of my hair**. I think both of those comments were racist. With all that has happened, it is in my best interest to take the time to deal with my mental state and work through this process with my therapist. Please advise as to next steps and to who I may send my tasks once I organize them so that the team doesn't miss any deadlines." (Emphasis added).

(Compl. ¶ 64).

On or about July 27, 2023, Plaintiff submitted medical documentation supporting her request for FMLA leave. (Compl. ¶ 65). On or about August 7, 2023, Plaintiff's request for FMLA was approved. (Compl. ¶ 66). On or about October 25, 2023, unable to further endure Defendant SMB's discriminatory and retaliatory behavior, Plaintiff was constructively discharged. (Compl. ¶¶ 68-69).

## **STANDARD OF REVIEW**

In considering a motion to dismiss, the Court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the nonmoving party. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Dismissal is inappropriate even when "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.*, at 231. "To survive a motion to dismiss, a complaint need only "nudge[]" the claims "across the line from conceivable to plausible."" *Doe v. New Castle Cnty.*, 2024 U.S. App. LEXIS 28419, *1 (3d Cir. Nov. 8, 2024)

(*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009)).  However, at the same time, the facts alleged must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do*." Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Therefore, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief. *Ashcroft*, supra, at 678.  Applying the principles of *Iqbal* and *Twombly*, the Third Circuit in *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), set forth a three-part test for evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss.  First, the court must "identif[y] the elements of the claim." *Ibid*.  Second, the court must "review the complaint to strike conclusory allegations." *Ibid*.  Third, the court must "look at the well-pleaded components of the complaint and evaluat[e] whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Ibid*.

Critically, for employment discrimination suits at the motion to dismiss stage, "**a plaintiff is not required to establish the elements of a *prima facie* case but instead, need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element**." *Baldini v. Cnty. of Delaware*, 2024 U.S. Dist. LEXIS 118814, *4 (E. D. Pa, Jul. 8, 2024) (emphasis added) (*quoting Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009)); *see also In re Rockefeller Center Properties, Inc.*, 311 F.3d 198, 215 (3d Cir. 2002) (holding that, on a motion to dismiss, the issue "is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims.").

## LEGAL ARGUMENT

### I.      Plaintiff's Title VII Claims Are Timely

Defendant SMB argues that Plaintiff's Title VII claims are limited to acts occurring on or after April 20, 2023, which is 300 days before Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").   However, this argument reflects a fundamental misunderstanding of the controlling case law and statute that govern the timeliness of Plaintiff's claims.

To assert a timely claim of discrimination under Title VII, a plaintiff must file a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 300 days of the discriminatory and/or retaliatory unlawful employment practice.  42 U.S.C. § 2000e-5(e)(1). Under well-established precedent, claims based on a hostile work environment are not subject to rigid, incident-by-incident timing requirements.  Rather, "hostile work environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).  A hostile work environment claim is timely so long as at least one act contributing to the environment occurred within the 300-day window preceding the EEOC filing. *Id*. at 120; *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165–67 (3d Cir. 2013).

Notably, "[t]he continuing violations doctrine is an 'equitable exception to the timely filing requirement." *Leonard v. SEPTA*, 2021 U.S. Dist. LEXIS 11946, *9-10 (E.D. Pa. Jan. 22, 2021) (*quoting Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001)); *see also West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754 (3d Cir. 1995).  Under the continuing violations doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the

court will grant relief for the earlier related acts that would otherwise be time barred." *Leonard, supra* (*quoting Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir.1991)).

Here, Plaintiff alleges an ongoing pattern of discriminatory and retaliatory conduct beginning in October 2022 and continuing through July 2023. Crucially, Plaintiff identifies multiple discriminatory and retaliatory acts within the 300-day period, including repeated and escalating sexual harassment by her supervisor, Attorney, Ryane Sophia Kilmer, beginning in May 2023. Examples of Ms. Kilmer's harassment include, *inter alia*:

- Ms. Kilmer's repeated attempts to initiate inappropriate personal conversations with Plaintiff under the pretense of work meetings. (Compl. ¶¶ 40–41);

- Unwanted texts and in-person pressure for Plaintiff to attend a social event, including Ms. Kilmer's statements such as "we're going," "we look cute together," "don't stand me up," and "you better not bail on me." (Compl. ¶¶ 42–47);

- A series of approximately seventeen unsolicited messages to Plaintiff's personal and work email accounts, inquiring as to whether she would be attending the event. (Compl. ¶¶ 48–50);

- Ms. Kilmer's flirtatious text to Plaintiff, "you look cute," two weeks later (Compl. ¶ 54).

Moreover, Plaintiff alleges that she experienced retaliation as a result of her June 16, 2023, complaint against Ms. Kilmer. For example:

- On July 14, 2023, Plaintiff was informed that an anonymous complaint had been made accusing her of engaging in a romantic relationship with her supervisor, Managing Attorney Peter Veloski — allegations Plaintiff categorically denied and believed were made in retaliation for her complaint against Ms. Kilmer. (Compl. ¶¶ 58–61);

- On July 21, 2023, Plaintiff received a targeted and disparaging email from a colleague, stating that she "throws others under the bus," further substantiating Defendant SMB's retaliatory animus. (Compl. ¶ 62).

These acts, having all occurred within the 300-day window, not only render Plaintiff's hostile work environment and retaliation claims timely, but also trigger the continuing violations doctrine, allowing the Court to consider the full scope of harassment and retaliation dating back to October 2022.  In fact, Plaintiff explicitly checked the box for "continuing violation" on her EEOC charge.  In this case, Ms. Kilmer's sexual harassment began in May 2023 and Plaintiff experienced retaliation for reporting the same in July 2023.  Both fall squarely within the limitations period.  As a result, the earlier acts of sexual harassment, race discrimination, and retaliation, while occurring before April 20, 2023, are not time-barred and demonstrate a continuous pattern of harassment and retaliation that culminated in Plaintiff's constructive discharge in October 2023.

## II.    Plaintiff's PHRA Claims Are Timely

To assert a parallel claim under the Pennsylvania Human Relations Act (PHRA), a plaintiff must file a charge of discrimination with the Pennsylvania Human Relations Commission (PHRC) within 180 days of the discriminatory and/or retaliatory unlawful employment practice. 43 Pa. Cons. Stat. Ann. § 959(a)(h).

"Certainly, a constructive discharge, if it occurred, constitutes an adverse employment action."  *Mieczkowski v. York City Sch. Dist.*, 414 Fed. Appx. 441, 446 (3d Cir. 2011) (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 247 n.32 (3d Cir. 2006)).  Here, Plaintiff alleges that she was constructively discharged on October 25, 2023, placing the final actionable event well within the PHRA's 180-day lookback period (i.e., after August 18, 2023).  The relevant date is when Plaintiff's employment effectively ended due to intolerable conditions.  This much was confirmed in *Ellingsworth v. Hartford Fire Ins. Co.*, 247 F. Supp. 3d 546 (E.D. Pa. 2017). In *Ellingsworth*, this Court addressed the timeliness of a constructive discharge claim brought under the PHRA and held that "the matter alleged to be discriminatory includes the employee's resignation and the clock

11

begins running only after the employee resigns." 247 F. Supp. 3d at 558-59 (quoting *Green v. Brennan*, 136 S. Ct. 1769, 1775 (2016) (internal quotations omitted)).

In this case, Plaintiff endured ongoing discrimination through July 25, 2023. (Compl. ¶ 64). The unlawful conduct triggered a decline in Plaintiff's mental health, and she was constructively discharged on October 25, 2023. (Compl. ¶¶ 65–69). Because that final act occurred within 180 days of February 14, 2024, her PHRA claims are timely.

### III.   Plaintiff Established a Prima Facie Case of Discrimination and Hostile Work Environment

Title VII prohibits employment practices that "discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race . . . sex[.]" 42 U.S.C. § 2000e-2(a)(1). A Plaintiff may further establish that an employer violated Title VII by proving that the discrimination created a hostile work environment. *Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293 (3d Cir. 1999).

A plaintiff can establish a hostile work environment by showing that: (1) the employee suffered intentional discrimination because of their sex and/or race; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally effected the plaintiff; (4) the discrimination would detrimentally effect a reasonable person of the same sex and/or race in that position; and (5) the existence of *respondeat superior* liability. *Weston v. Pennsylvania*, 251 F.3d 420, 426 (3d Cir. 2001) (applying the prima facie elements to sex discrimination); *Roberson v. Barretts Bus. Servs.*, 2019 U.S. Dist. LEXIS 150327, *15-16 (D. Del. Sept. 4, 2019) (applying the prima facie elements to race discrimination).[1]

---

[1] Courts analyze hostile work environment claims asserted under the PHRA using the same framework as Title VII claims. *See Jennings-Fowler v. City of Scranton*, 680 F. App'x 112, 117 (3d Cir. 2017).

In determining whether an environment is hostile, the Court must consider the totality of the circumstances, *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993), "including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Roberson*, at *16 (*quoting Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270-271 (2001)). "Because a hostile work environment is a single cause of action, rather than a sum of discrete claims, each to be judged independently, the focus is the work atmosphere as a whole." *West*, at 756.

A.    *Defendant SMB's Conduct was Severe or Pervasive.*

Defendant SMB argues that "the alleged conduct by Mr. Nater, Mr. Jasinski, and Ms. Kilmer [wa]s isolated and episodic," and, therefore, not severe or pervasive.  This argument is both factually and legally unsupported.  When viewed in the light most favorable to Plaintiff, the Complaint plausibly alleges that she was subjected to months of continuous discrimination and harassment while working for Defendant SMB.

The case *Bookhart v. Tri-Cnty. OIC*, 2025 U.S. Dist. LEXIS 94505 (M.D. Pa. May 19, 2025) is instructive and involved facts analogous to those at bar.  In *Bookhart*, the court found that repeated comments describing the plaintiff as looking "good" and "nice," along with referring to her as "eye candy" over a one-month span, were enough to plausibly allege a hostile work environment.  *Id*. at *16-17.  The court then went on to deny the employer's motion to dismiss plaintiff's Title VII hostile work environment claim, explaining that when "severity" and "pervasiveness" are challenged, those questions were "to be answered after discovery."  *Id*. at *16 (citing *Castleberry v. STI Grp.*, 863 F.3d 259, 266 (3d Cir. 2017).  *See also Fedder v. Bloomsburg Univ. of Pa.*, 2024 U.S. Dist. LEXIS 2531, *6-7 (M.D. Pa. February 13, 2024) (denying motion to

dismiss Title VII and PHRA sexual harassment claims based on similar reasoning); *Rosh v. Gold Std. Café at Penn, Inc.*, 2016 U.S. Dist. LEXIS 175592, at *9 (E.D. Pa. Dec. 19, 2016) (denying motion to dismiss Title VII and PHRA hostile work environment claims where sexual harassment occurred continuously over the course of twelve months and caused the plaintiff to resign);

Here, Plaintiff has alleged the following hostile, discriminatory conduct:

- October 6, 2022: Co-worker, William Nater, made a sexually degrading comment: "You might as well just have a daughter because she's gonna get fucked the same way." (Compl. ¶ 17).

- October 2022 –November 2022: Co-worker, Matthew Jasinski, mocked Plaintiff's Afro-textured hair, made a race-based superiority comparison, stated "*you people* always get drafted first," implied that Plaintiff dressed like a "stripper," and told her, "**If you weren't a monkey you would understand**," invoking a notorious racial slur. (Compl. ¶¶ 17, 23, 24, 26, 28-30).

- **November 2022**: Plaintiff found a steak knife next to a defaced note on her desk; Jasinski taunted her moments later (Compl. ¶¶ 34–35).

- **January 2023**: Jasinski continued harassing Plaintiff by rearranging her desk items after transferring floors (Compl. ¶ 37).

- **May 2023**: Supervisor, Ryane Sophia Kilmer, initiated unwanted sexual advances, pressured Plaintiff to attend a winery event and made repeated comments like "*we look cute together*," "**don't stand me up**," and "**you better not bail on me**," followed by approximately seventeen messages inquiring whether she would be attending the event. Two weeks later, she told Plaintiff, "**you look cute**," while Plaintiff was at her desk. (Compl. ¶¶ 40-47, 54).

- July 14, 2023: Plaintiff was informed that an anonymous complaint had been made accusing her of engaging in a romantic relationship with her supervisor, Managing Attorney Peter Veloski — allegations Plaintiff categorically denied and believed were made in retaliation for her complaint against Ms. Kilmer. (Compl. ¶¶ 58–61).

These facts establish both severity and pervasiveness, with the harassment spanning from October 2022 to July 2023. Taken as a whole, Plaintiff's allegations depict a workplace permeated by race and sex-based hostility, and her working conditions were clearly altered. Plaintiff suffered

emotional distress, took medical leave, and ultimately resigned as a result of the hostile work environment. (Compl. ¶¶ 63–69). Any reasonable person in her position would be similarly impacted. Accordingly, Plaintiff has sufficiently pled a hostile work environment claim, and Defendant SMB's motion should be denied.

### B.    Plaintiff Has Established a Basis for Respondeat Superior Liability

Under Title VII, an employer is strictly liable for supervisor harassment that culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment. *Pennsylvania State Police. v. Suders*, 542 U.S. 129, 137 (2004) (internal citation and quotations omitted). "Although direct economic harm is an important indicator of a tangible adverse employment action, it is not the sine qua non." *Leblanc v. Hill Sch.*, 2015 U.S. Dist. LEXIS 2981, at *21 (E.D. Pa. Jan. 12, 2015) (quoting *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 153 (3d Cir. 1999)). Thus, "[i]f an employer's act substantially decreases an employee's earning potential and causes significant disruption in his or her working conditions, a tangible adverse employment action may be found." *Durham*, 166 F.3d at 153 (citation omitted). Notably, in *Magerr v. City of Philadelphia*, the court found that denial of basic tools and resources needed to do one's job constituted such disruption and warranted denial of a motion to dismiss. 2016 U.S. Dist. LEXIS 48177, at *16-17 (E.D. Pa. April 11, 2016).

The same principle applies here. Following Plaintiff's rejection of Ms. Kilmer's (her supervisor) advances and complaint to Human Resources, Defendant SMB failed to protect Plaintiff from retaliation. Instead, Defendant SMB falsely accused Plaintiff of engaging in a romantic relationship with a managing attorney. (Compl. ¶¶ 55–63). Not only did Defendant SMB fail to intervene, but it also facilitated retaliation by allowing Plaintiff to be ridiculed and undermined for reporting discrimination. For example, in or around July 2023, Plaintiff received

an email in which she was accused of "throwing people under the bus." (Compl. ¶ 62). As a result, Plaintiff's credibility and professionalism were seriously eroded in the eyes of her peers, ultimately leading her to take a leave of absence. Like the employee in *Magerr*, here, Plaintiff experienced marginalization and loss of professional standing following her multiple complaints of sexual harassment. (Compl. ¶¶ 55–69). These actions materially disrupted Plaintiff's working conditions and amount to a tangible adverse employment action. As such, Plaintiff has established a basis for *respondent superior* liability, and Defendant SMB's motion should be denied.

### IV.    **Plaintiff Has Established a Prima Facie Case of Retaliation**

In the interest of brevity, Plaintiff relies on the facts and legal arguments set forth in Section III (B) of this memorandum to demonstrate that she engaged in protected activity and suffered tangible employment actions. As to the final prong, temporal proximity between Plaintiff's protected activity and the adverse actions supports a strong inference of causation. Plaintiff was ostracized and falsely accused of an improper relationship immediately after reporting Ms. Kilmer's harassment. Based on the above, Plaintiff has sufficiently pled retaliation under Title VII and the PHRA.

### V.    **Plaintiff Was Constructively Discharged**

An employee's resignation amounts to a constructive discharge when an "[employer] permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign." *Duffy v. Paper Magic Group, Inc.*, 265 F.3d 163, 167 (3d Cir. 2001). Under the constructive discharge doctrine, "an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes." *Hill v. Borough of Kutztown*, 455 F.3d 225, 233 n.7 (3d Cir. 2006) (*quoting Pa. State Police v. Suders*, 542 U.S. 129, 134 (2004)). The ultimate standard is objective, and contemplates whether "working

conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Ibid*.

When analyzing the constructive discharge doctrine, courts have also considered "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Pallatto v. Westmorland County Children's Bureau*, 2014 U.S. Dist. LEXIS 27008, at *51-52 (W.D. Pa. Mar. 3, 2014) (*quoting Harris*, 510 U.S. at 23). The analysis also focuses on the "totality of the circumstances," as no one factor is determinative. *Andrews v. Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990). In reviewing the totality of the circumstances, in the light most favorable to plaintiff, courts have denied summary judgment on constructive discharge claims in less egregious working environments. *See Carswell v. Monumental Life Ins. Co.*, 2014 U.S. Dist. LEXIS 93329, at *68-69 (W.D. Pa. July 9, 2014) (denying summary judgment where Plaintiff presented evidence that she was constructively discharged due to being threatened with termination and laughed at by her superiors for complaining of discrimination). While *Carswell* was decided at the summary judgment stage, the same reasoning applies to the motion at bar.

Here, Defendant SMB falsely accused Plaintiff of engaging in a romantic relationship with a managing attorney, one month after her complaint of sexual harassment against Ms. Kilmer. This allegation, combined with Ms. Kilmer's harassment and nearly ten months of persistent discriminatory conduct by Mr. Jasinski, created an environment so toxic that no reasonable person would be expected to tolerate. The harassment directly impaired Plaintiff's ability to perform her job, forcing her to take a medical leave of absence, and ultimately resign. These allegations, taken as true and viewed in the light most favorable to Plaintiff, more than satisfy the pleading standard

for constructive discharge.  Based on the above, Plaintiff has sufficiently pled a constructive discharge claim under Title VII and the PHRA, and Defendant SMB's Motion to Dismiss should be denied.

**VI.    Should The Court Grant Any Part of Defendant SMB's Motion, Plaintiff Requests Leave to Amend the Complaint**

In the event that any portion of Defendant SMB's Motion is granted, or should the Court find that the Complaint is inadequately pled, Plaintiff respectfully requests leave to amend pursuant to Fed. R. Civ. P. 15. "Leave to amend should be freely granted unless there is an apparent reason why it should not be, such as futility of amendment." *Hummel v. JH Cornelia, LLC*, 2023 U.S. Dist. LEXIS 71583, *16-17 (E. D. Pa. Apr. 25, 2023) (*citing Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Naranjo v. Unit Manager Coulehan*,  2024 U.S. Dist. LEXIS 214797, at *1-2 (W.D. Pa. Nov. 26, 2024) (granting motion to dismiss, but directing plaintiff to file an amended complaint); *Hudak v. United States Postal Serv.*,  1994 U.S. Dist. LEXIS 1442 (E.D. Pa. Feb. 15, 1994) (granting motion to dismiss, but allowing plaintiff to file an amended complaint).  Allowing Plaintiff to amend would not be futile.  Plaintiff has already alleged detailed facts supporting her claims of discrimination, hostile work environment, and constructive discharge.  To the extent the Court finds any factual allegations insufficient or lacking in detail, Plaintiff can readily amend to cure such deficiencies based on existing facts and additional context.

## CONCLUSION

In light of the above, for the foregoing reasons, Plaintiff respectfully requests that Defendant SMB's Motion to Dismiss be denied in its entirety, together with any other relief the Court deems just and proper.

Dated: July 16, 2025
        New York, New York

                                                    Respectfully Submitted,

By: ___/s/ Jesse. S. Weinstein, Esq.___
Jesse S. Weinstein, Esq.
**Phillips & Associates, PLLC**
*Attorneys for Plaintiff*
45 Broadway, 28th Floor
New York, New York 10006
(212)-248-7431

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 16th day of July, 2025, a true and correct copy of the

foregoing Plaintiff's Memorandum of Law in Opposition to Defendant SMB's Motion to Dismiss

was electronically filed using the Eastern District of Pennsylvania's ECF system, through which

this document is available for viewing and downloading, causing a notice of electronic filing to

be served upon the following counsel of record:

Michael L. Banks, Esq.
**Morgan, Lewis & Bockius LLP**
*Attorneys for Defendant*
2222 Market Street
Philadelphia, PA 19103
(215) 963-5000

 /s/ Jesse. S. Weinstein

Jesse S. Weinstein, Esq.