**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

<table>
<tr><td>

**YANEZ PEREZ,**
               *Plaintiff,*

     **v.**

**SALTZ, MONGELUZZI, & BENDESKY, P.C.,**
               *Defendant.*

</td><td>

**Civil No. 25-2107**

</td></tr>
</table>

**<u>MEMORANDUM</u>**

**Costello, J.**                                                                                     **July 14, 2026**

Plaintiff Yanez Perez brings this action under Title VII and the Pennsylvania Human Relations Act (PHRA) against her former employer, Saltz, Mongeluzzi, and Bendesky, P.C.  She alleges race and sex-based discrimination and harassment from multiple colleagues and retaliation for reporting a colleague's sexual harassment to Defendant's Human Resources (HR) department, all of which culminated in her resignation.  Defendant moves to dismiss the Complaint as untimely and for failure to state a claim.  For the reasons that follow, the Court will grant Defendant's motion as to all claims except Plaintiff's constructive discharge claims with leave to amend.

## I.      BACKGROUND[1]

On August 8, 2022, Plaintiff began working for Defendant as a Paralegal.  ECF No. 1 ¶ 13.  Plaintiff was the only Afro-Latina at Defendant's firm.  *Id.* ¶ 16.  On October 6, 2022, after Plaintiff expressed that she may have a son and daughter one day, File Clerk William Nater

---

[1] In analyzing a motion to dismiss, the Court must take the facts as alleged in Plaintiff's Complaint as true.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

remarked: "You might as well just have a daughter because she's gonna get f[****]d the same way." *Id.* ¶ 17. On October 7, Plaintiff reported the comment to HR in writing. *Id.* ¶ 19. As a result, Defendant fired Nater the next day. *Id.* ¶ 20. That same day, IT Analyst Matthew Jasinski, a white man, told Plaintiff she was "getting people fired around here." *Id.* ¶¶ 21, 25. Because she was a new employee, Plaintiff believed Jasinski was her superior, so she did not report his conduct for fear of losing her job. *Id.* ¶ 22.

Between October 2022 and January 2023, Jasinski made a number of inappropriate and offensive remarks to Plaintiff, including: (1) commenting that her curly hair looked like she "stuck her finger in a socket;" (2) stating that he was "better than" Plaintiff; (3) remarking that "you people always get drafted first," allegedly referring to Plaintiff's race, during a conversation about a sports draft pick; (4) calling Plaintiff's shoes "stripper shoes" and stating, "I know what you'd be into;" (5) telling Plaintiff that she "would understand" Defendant's IT system if she "weren't a monkey;" and (6) asking Plaintiff if she was going to "run and tell" after someone, presumably Jasinski, left a knife on Plaintiff's desk and maliciously altered an affirmation Plaintiff had left for herself, changing it from a positive statement to an insult. *Id.* ¶¶ 23-24, 26, 28-29, 34-35. Jasinski also regularly rearranged items on Plaintiff's desk. *Id.* ¶ 37.

Then, throughout May 2023, Ryane Sophia Kilmer, an Associate Attorney who Plaintiff believed was her supervisor, engaged in a series of behaviors that made Plaintiff uncomfortable. *Id.* ¶ 38. Kilmer "regularly summoned" Plaintiff to her office under the guise of reviewing assignments but would instead discuss her dating life and frequently seek validation about her looks. *Id.* ¶¶ 40-41. On May 19, Kilmer approached Plaintiff multiple times about attending a winery event to which Defendant was offering tickets. *Id.* ¶¶ 43-44. Kilmer later announced: "I got the tickets and we're going," stated "we look cute together," and warned Plaintiff that she

"better not bail" on her or stand her up. *Id.* ¶¶ 45-46. Kilmer then texted Plaintiff: "I look super cute. We look super cute." *Id.* ¶ 47. Kilmer also sent seventeen emails and multiple text messages asking Plaintiff if she would attend the event. *Id.* ¶¶ 47-49. Kilmer's harassing behavior continued for weeks. *Id.* ¶ 53.

On June 16, 2023, Plaintiff reported Kilmer's conduct to HR. *Id.* ¶ 55. "Soon after," HR met with Plaintiff and Kilmer individually. *Id.* ¶ 56. On July 15, HR met with Plaintiff to advise her of an anonymous report that Plaintiff was in a romantic relationship with her managing attorney. *Id.* ¶ 59. HR told Plaintiff that the attorney denied the allegation. *Id.* ¶ 60. Plaintiff confirmed that the allegation was false and expressed her belief that the false report was made in retaliation for reporting Kilmer's harassment. *Id.* ¶ 61. The next week, Plaintiff received an email from another paralegal complaining that Plaintiff "throws others under the bus." *Id.* ¶ 62.

On July 25, 2023, Plaintiff emailed the Chief Operating Officer and HR Manager requesting a leave of absence due to mental health issues, citing Kilmer's harassment, the false allegation of a romantic relationship, her coworker's email, and racist remarks. *Id.* ¶ 64. Defendant approved Plaintiff's FMLA leave request. *Id.* ¶ 66. Plaintiff did not return to work after July 24, 2023. *Id.* ¶ 67. Instead, Plaintiff resigned on October 25, 2023. *Id.* ¶ 68.

On or about February 14, 2024, Plaintiff filed a dual Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission ("PHRC"). *Id.* ¶ 5. On or about January 28, 2025, she received a Notice of Right to Sue Letter from the EEOC. *Id.* ¶ 16. On April 27, 2025, Plaintiff brought this action alleging discrimination and retaliation under Title VII and the Pennsylvania Human Relations Act (PHRA), including sexual harassment, hostile work environment, and constructive discharge.

3

Defendant moves to dismiss, raising four primary arguments: (1) Plaintiff's Title VII claims premised on Nater and Jasinski's conduct and all PHRA claims are untimely; (2) Plaintiff's hostile work environment claim fails to allege severe or pervasive conduct or *respondeat superior* liability; (3) Plaintiff's retaliation claim fails to allege an adverse employment action; and (4) Plaintiff's constructive discharge claim fails to allege that her workplace was "objectively intolerable." ECF No. 12-1 at 5-16.

Plaintiff opposed the motion, arguing that (1) her Title VII claims are timely under the continuing violation doctrine; (2) her PHRA claims are timely because she was constructively discharged within the limitations period; and (3) she adequately states a claim for discrimination, hostile work environment, retaliation, and constructive discharge. ECF No. 13 at 11-17. Should the Court disagree, Plaintiff requests leave to amend her Complaint. *Id.* at 18.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads facts sufficient to support a reasonable inference "that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Facial plausibility demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When reviewing a 12(b)(6) motion, a court can consider the complaint, as well as "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

4

## III.   DISCUSSION

### A.   Timeliness

#### 1.   Title VII Claims

Pursuant to 42 U.S.C. § 2000e-5, an individual must file a Title VII charge with the EEOC within 300 days of the "alleged unlawful employment practice."  Courts measure the statute of limitations differently for discrimination and hostile work environment claims.  In discrimination claims, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  "Discrete acts" include "easy to identify" events such as "termination, failure to promote, denial of transfer, or refusal to hire."  *Id.* at 114.  Conversely, in hostile work environment claims, the "'unlawful employment practice' . . . occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own."  *Id.* at 115 (citation omitted).  Accordingly, hostile work environment claims are based on the "cumulative effect of individual acts."  *Id.*

Under the continuing violation doctrine, discriminatory acts that are not "individually actionable" can be "aggregated to make out a hostile work environment claim . . . so long as they are linked in a pattern of actions which continues into the applicable limitations period."  *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006).  "To allege a continuing violation, the plaintiff must show that all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable limitations period."  *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165-66 (3d Cir. 2013) (citing *Morgan*, 536 U.S. at 122).

In determining whether the pre- and post-limitation acts are part of the same unlawful practice, courts consider whether the acts involved "similar conduct by the same individuals, suggesting a persistent, ongoing pattern." *Mandel*, 706 F.3d at 167 (allowing hostile work environment claim to proceed where one incident of a gender-based insult fell into limitations period, but plaintiff alleged "many" prior acts involving similar gender-based comments and harassment lodged by the same individuals). "[F]actors to consider include, but are not limited to: (1) subject matter, or whether the acts constitute the same type of discrimination, tending to connect them in a continuing violation; and (2) frequency, or whether the acts are recurring or . . . isolated incidents." *Oliver v. Clinical Pracs. of Univ. of Pennsylvania*, 921 F. Supp. 2d 434, 445 (E.D. Pa. 2013) (internal citations omitted). Acts perpetrated by "different supervisors, acting independently, over different time periods generally demonstrate isolated events rather than a persistent, ongoing pattern of discrimination." *Id.* at 445-46.

Plaintiff filed her charge with the EEOC on February 14, 2024. ECF No. 1 ¶ 5. Therefore, her claims under Title VII are limited to acts occurring on or after April 20, 2023. Plaintiff argues that the conduct within the limitations period—Kilmer's harassment, the accusation of an office relationship, and the paralegal's email—allows the Court to examine Nater and Jasinski's otherwise untimely actions as part of the same hostile work environment. ECF No. 13 at 9-11.

Plaintiff is incorrect. The continuing violation doctrine does not apply here because Plaintiff has not alleged that the pre- and post-limitation conduct were part of the same unlawful employment practice. *See Morgan*, 536 U.S. at 120. Nor has she alleged "similar conduct by the same individuals." *Mandel*, 706 F.3d at 167. *Mandel* identified a continuing violation based on different individuals' conduct and different forms of sexual harassment and sex discrimination;

6

however, many of the prior acts "involved similar conduct by the same individuals," and the supervisor who used a sex-based insult during the limitations period had used the same insult before.  706 F.3d at 161-62, 167.

Plaintiff's allegations lack a similar connective tissue.  First, compared to Kilmer's conduct, the conduct occurring before the limitations period involved different coworkers and time periods.  *See Oliver*, 921 F. Supp. at 445.  Plaintiff alleges that Kilmer acted as her supervisor; by contrast, Nater was a coworker, and she "believed" Jasinski was her "superior." ECF No. 1 ¶¶ 17, 22, 38.  While Plaintiff alleges a pattern of misconduct by Kilmer and Jasinski, Nater's comment, though egregious, was a single "isolated incident."  *See Oliver*, 921 F. Supp. at 445.  Finally, Nater and Jasinski's conduct is too distinct from Kilmer's to constitute a continuing violation.  *See id.* (considering whether the alleged acts involve the "same type" of discrimination).  Nater and Jasinski's comments exhibit race and sex-based animus, but Plaintiff does not allege that Kilmer engaged in race-based discrimination or harassment.  Additionally, the majority of Plaintiff's allegations concerning Jasinski involve race and sex-based insults. ECF No. 1 ¶¶ 23-29.  By contrast, Plaintiff alleges that Kilmer made flirtatious remarks, inappropriately complimented her appearance, initiated overly personal conversations, and pressured her to attend an event.  *Id.* ¶¶ 40-54.

Based on the above, Plaintiff has not sufficiently alleged a "persistent, ongoing pattern" of discrimination and harassment that would permit the Court to consider untimely allegations. *Mandel*, 706 F.3d at 167.  Accordingly, the continuing violation doctrine does not apply.  The Court may consider only Kilmer's conduct in evaluating Plaintiff's hostile work environment claims under Title VII (Count I).

2.    PHRA Claims

Under the PHRA, an individual must file an administrative charge of discrimination within 180 days of each alleged act of discrimination or retaliation.  43 P.S. § 959(h).  In constructive discharge claims, the "matter alleged to be discriminatory" includes the employee's resignation.  *Green v. Brennan*, 578 U.S. 547, 554 (2016).  Accordingly, "a resignation triggers the limitations period for a constructive-discharge claim."  *Id.* at 563.  An employee "resigns" when they give notice of their resignation.  *Id.* at 564.

Because Plaintiff filed her charge with the PHRC on February 14, 2024, her PHRA claims are limited to acts occurring on or after August 18, 2023.  Plaintiff resigned on or about October 25, 2023.  ECF No. 1 ¶¶ 68-69.  Defendant asserts that Plaintiff's constructive discharge claim is untimely because she fails to allege that any "discriminatory or harassing conduct" continued after she first took leave on July 24, 2023.  ECF No. 12-1 at 6.  However, constructive discharge occurs when an employee resigns, *not* when the last discriminatory act prior to resignation occurs.  *Green*, 578 U.S. at 563.  Therefore, Plaintiff's constructive discharge claim under the PHRA (Count III) is timely.  However, Plaintiff's claims based on discrete acts that occurred before August 18, 2023 are untimely, including discrimination, hostile work environment, sexual harassment, and retaliation (Counts III and IV).

Accordingly, Plaintiff's race-based claims under Title VII and all PHRA claims other than constructive discharge are time-barred.

**B.    Hostile Work Environment**

Defendant argues that Plaintiff fails to plausibly allege "severe or pervasive conduct" that was "so extreme as to alter the conditions of her employment" based on race or sex.  ECF No. 12-1 at 8-9.  It further argues that Plaintiff fails to allege *respondeat superior* liability, in part

because (1) Defendant promptly investigated her concerns about Kilmer; and (2) Kilmer was not her supervisor.  *Id.* at 10-11; ECF No. 16 at 4-5.

To prevail on a Title VII hostile work environment claim, a plaintiff must establish five elements: "(1) the employee suffered intentional discrimination because of his/her sex, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the existence of *respondeat superior* liability."  *Mandel*, 706 F.3d at 167.  Under the *McDonnell-Douglas* framework, an employment discrimination claim "necessarily" survives a motion to dismiss if the plaintiff satisfies the requisite *prima facie* elements.  *Castleberry v. STI Grp.*, 863 F.3d 259, 266 (3d Cir. 2017).  However, a complaint need not *prove* each *prima facie* element so long as it raises "a reasonable expectation that discovery will reveal evidence of the necessary element[s]."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009).

In determining whether discrimination is "severe or pervasive," a court must consider "the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  *Mandel*, 706 F.3d at 168 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).  For discrimination to constitute severe or pervasive behavior, it must "alter the conditions of . . . employment and create an abusive working environment."  *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986).  "[S]ome harassment may be severe enough to contaminate an environment even if not pervasive; other, less objectionable, conduct will contaminate the workplace only if it is pervasive."  *Castleberry*, 863 F.3d at 264 (quoting *Jensen v. Potter*, 435 F.3d 444, 449, n.3 (3d Cir. 2006), *overruled in part on other grounds*).

"[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citation and quotation marks omitted). However, an "isolated incident of discrimination" may state a claim for harassment if sufficiently severe. *Castleberry*, 863 F.3d at 265 (using racial epithet in front of Black plaintiffs and their non-Black coworkers and threatening termination "within the same breath" constituted "severe" conduct that could establish a hostile work environment). Even "[l]ess severe isolated incidents which would not themselves rise to the level of discrimination may, when taken together . . . evidence discriminatory animus, and one severe incident may be enough to create a hostile work environment." *Starnes v. Butler Cnty. Ct. of Common Pleas, 50th Jud. Dist.*, 971 F.3d 416, 428 (3d Cir. 2020) (cleaned up) (denying motion to dismiss where allegations that plaintiff's supervisor sexually harassed her, coerced her into sexual relations, and treated her differently than male colleagues over four years could amount to severe or pervasive discrimination).

Courts also consider the frequency of the discriminatory conduct. *See Nitkin v. Main Line Health*, 67 F.4th 565, 571 (3d Cir. 2023) (citing *Harris*, 510 U.S. at 23) (affirming summary judgment for employer where harasser made twenty-one unspecified sexual remarks, and the seven specified remarks spanned over three-and-a-half years and were not severe); *Qin v. Vertex, Inc.*, 100 F.4th 458, 471 (3d Cir. 2024) (three comments from different colleagues over two decades, including "go back to China," were "offensive" but not severe or pervasive).

For the purposes of a motion to dismiss, sexually harassing conduct can be sufficiently severe or pervasive where a plaintiff provides "several specific examples" of "regular slights based on her sex throughout many months." *See Marquis v. Philadelphia Gas Works*, 25cv7005,

10

2026 WL 711802, at *1-2 (E.D. Pa. Mar. 13, 2026) (plaintiff stated hostile work environment claim where, *inter alia*, male coworker used gender-based slur; manager withheld HR contact information to report him; coworker perpetrated "pervasive sexual harassment" including inappropriate comments and "violations of physical boundary protocols;" and HR "shamed" her when she reported these incidents).

However, even intrusive and inappropriate comments may not be so extreme as to alter the conditions of employment.  *See, e.g.*, *Sousa v. Amazon.com, Inc.*, 22cv3043, 2023 WL 7486751, at *3 (3d Cir. Nov. 13, 2023) (supervisor's "periodic comments and occasional late-night phone calls in which he sometimes inappropriately veered into [plaintiff]'s personal life" did not amount to more than "poor taste that is sometimes part of 'the ordinary tribulations of the workplace.'") (quoting *Faragher*, 524 U.S. at 788); *Brooks v. Chester Valley Golf Club*, 25cv761, 2025 WL 3210349, at *6 (E.D. Pa. Nov. 17, 2025) (superior's email calling plaintiff "rude and disrespectful" was a "mere offensive utterance" that could not sustain hostile work environment claim on its own).

Plaintiff alleges a hostile work environment based on the following: First, from May to June 2023, Kilmer (1) "regularly summoned Plaintiff to her office under the pretext of reviewing completed assignments" but would instead discuss Kilmer's "personal life and appearance;" (2) "regularly sought validation about her looks" and shared details about her romantic life; (3) pressured her to attend an event multiple times in one day, stated "we look cute together," and warned Plaintiff that she "better not bail" on her or stand her up, followed by seventeen emails and multiple texts asking whether Plaintiff would attend; and (4) weeks later, telling Plaintiff: "you look cute."  ECF No. 1 ¶¶ 40-47, 54.[2]  Second, one month after Plaintiff reported Kilmer,

---

[2] This excludes the time-barred allegations that the Court cannot consider.

11

HR informed Plaintiff of an anonymous report that she was dating her supervisor.  *Id.* ¶¶ 55, 58-61.  Third, one week later, a paralegal emailed Plaintiff stating that she "throws others under the bus."  *Id.* ¶ 62.  These facts are not severe or pervasive enough to alter the conditions of Plaintiff's employment.

Frequency:  The "frequency" of the conduct supports Plaintiff's claim.  Unlike the sporadic comments in *Nitkin*, the conduct Plaintiff alleges regularly occurred over two months, including multiple times in one day.  67 F.4th at 571.  Moreover, the HR investigation and the paralegal's email occurred just one month after Plaintiff reported Kilmer.  ECF No. 1 ¶ 55-62.  However, taking her Complaint as a whole, Plaintiff has not alleged facts to support any other factor under the totality test.

Severity:  Kilmer's conduct, while inappropriate, is not severe.  Kilmer's statements were less severe or humiliating than the "mere offensive utterances" in *Nitkin*.  67 F.4th at 568 (in one-on-one and group settings, superior discussed sexual relationship with his wife and other women, described his sex and pornography addiction, told plaintiff that a male patient "would really like" to be alone with her, and remarked that women could "get anything they want" through sex).

In discussing her dating life and pressuring Plaintiff to attend an event, Kilmer may have "inappropriately veered into" her personal life.  *Sousa*, 2023 WL 7486751, at *3.  However, that does not amount to more than "poor taste" below the requisite level of severity.  *Id.*  Similarly, even when combined with the above facts, the paralegal's email is likely a "mere offensive utterance" akin to the email calling the plaintiff "rude" in *Brooks*, 2025 WL 3210349, at *6.

Physically Threatening/Humiliating:  Unlike the racial slur accompanied by the threat of termination in *Castleberry*, Kilmer's comments were not so threatening or humiliating as to alter the conditions of Plaintiff's employment.  863 F.3d at 265.  Kilmer warned Plaintiff not to stand

12

her up or "bail on" her, but she did not threaten physical contact or termination.  ECF No. 1 ¶¶ 45-46.

Unreasonably Interferes with Work Performance:  Plaintiff's allegations here fall short. Plaintiff alleges that the harassment and HR investigation "unreasonably interfered" with her job performance because she suffered emotional distress, took medical leave, and resigned, and "any reasonable person" would be similarly impacted.  ECF No. 13 at 14-15.  However, unlike the HR Department that "shamed" the plaintiff for reporting harassment in *Marquis*, Defendant freely informed Plaintiff that her managing attorney denied a romantic relationship and provided Plaintiff the opportunity to do the same.  2026 WL 711802, at *1.  Moreover, "a sexually objectionable environment must be both objectively and subjectively offensive," and Plaintiff fails to allege an objectively offensive environment.  *Faragher*, 524 U.S. at 775.

Totality of the Circumstances:  Certainly, Plaintiff was subjectively offended.  However, under the totality of the circumstances, her Complaint fails to raise a reasonable expectation that discovery will reveal objectively severe or pervasive conduct.[3]

Therefore, the Court grants Defendant's motion as to Plaintiff's hostile work environment claims (Counts I and III).

### C.    Retaliation

Defendant argues that Plaintiff fails to allege that her report against Kilmer resulted in an adverse employment action.  ECF No. 12-1 at 11.  Plaintiff counters that: (1) Defendant retaliated by falsely accusing her of a romantic relationship and allowing Plaintiff to be "ridiculed and undermined" for reporting Kilmer; and (2) Defendant's actions caused a loss of

---

[3] Because Plaintiff's Complaint does not plausibly allege severe or pervasive conduct, the Court does not reach the issue of *respondeat superior* liability.

professional standing and forced her to take medical leave.  ECF No. 13 at 15-16 (citing ECF No. 1 ¶¶ 55-69).

A plaintiff "must plead sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of . . . retaliation." *Calloway v. Villanova Univ.*, 25cv400, 2025 WL 777645, at *5 (E.D. Pa. Mar. 11, 2025) (citing *Fowler*, 578 F.3d at 213; *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 788-89 (3d Cir. 2016)).  Retaliation claims under the PHRA are interpreted "coextensively" with Title VII claims.  *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006).  To state a *prima facie* claim for retaliation, a plaintiff must show that: (1) she engaged in conduct protected by Title VII; (2) the employer took adverse action against her; and (3) a causal link exists between her protected conduct and the adverse action.  *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 346 (3d Cir. 2022).  Defendant contests that Plaintiff experienced an "adverse employment action."[4]  ECF No. 12-1 at 11.

An "adverse action" against the plaintiff must be "materially adverse," such that it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 71-72 (2006) (internal quotation marks omitted) (reassignment to more arduous duties and thirty-seven-day suspension without pay were materially adverse actions); *Ellingsworth v. Hartford Fire Ins. Co.*, 247 F. Supp. 3d 546, 557 (E.D. Pa. 2017) (adequately pleaded constructive discharge claim constituted "adverse action").  Typically, "petty slights, minor annoyances, and simple lack of good manners" are not materially adverse. *White*, 548 U.S. 53 at 68.  However, "[t]he cumulative impact of retaliatory acts may become actionable even though the actions would

---

[4] Despite Defendant's reference to Plaintiff's "alleged" protected activity in its Motion to Dismiss, Defendant does not dispute that Plaintiff engaged in protected activity for purposes of her retaliation claim.  ECF No. 12-1 at 11.

be *de minimis* if considered in isolation." *Brennan v. Norton*, 350 F.3d 399, 422, n.17 (3d Cir. 2003).

None of Plaintiff's allegations amount to a materially adverse action. Few courts have addressed HR investigations themselves as adverse actions, but investigations *resulting in* adverse actions can constitute material adversity.[5] By contrast, Defendant's investigation into Plaintiff and her managing attorney did not result in any materially adverse consequences, such as suspension without pay or termination. Moreover, Plaintiff does not claim that Defendant failed to provide an opportunity to deny the allegations or took any adverse action after Plaintiff denied them. While perhaps demonstrative of retaliatory animus, her coworker's email is closer to a "petty slight" than a materially adverse action, especially as the email was not from HR personnel or a supervisor such that it would plausibly dissuade Plaintiff from reporting discrimination or harassment. *See White*, 548 U.S. 53 at 68.

Finally, Plaintiff's allegations regarding her loss of professionalism, without more, are insufficient to plausibly allege an adverse action. *C.f. Stremple v. Nicholson*, 289 F. App'x 571, 574 (3d Cir. 2008) (physician was constructively discharged based on loss of "responsibilities, status, and authority" after employer demoted him, transferred him to site that impaired his job functions, excluded him from operating floor, and moved his office away from operating rooms after he filed an EEOC complaint). Plaintiff analogizes her "loss of professional standing" to a case that characterized the "denial of basic tools and resources needed to do one's job" as an

---

[5] *See, e.g.*, *Hussein v. UPMC Mercy Hosp.*, 466 F. App'x 108, 111-12 (3d Cir. 2012) (terminating plaintiff after HR investigation into substantiated allegations of misconduct was an "adverse action," but plaintiff failed to allege "causal link" element); *Zachariah v. Norristown State Hosp.*, 24cv2358, 2025 WL 439433, at *6 (E.D. Pa. Feb. 7, 2025) (three-month suspension without pay during investigation into false accusations against plaintiff was an "adverse action," but parties only contested "causal link" element).

adverse action.  ECF No. 13 at 15-16 (citing *Magerr v. City of Philadelphia*, 15cv4264, 2016 WL 1404156, at \*16-17 (E.D. Pa. Apr. 11, 2016)).  In *Magerr*, the employer denied the plaintiff a computer for several months, which prevented him from completing work and thus denied him the opportunity for professional advancement.  *Id.* at \*6.  Here, Plaintiff does not allege that Defendant denied her any basic resources or deprived her of professional opportunities.

Had Plaintiff explicitly pleaded that her constructive discharge was an "adverse action," she may have satisfied this prong.  *See Ellingsworth*, 247 F. Supp. 3d at 557.  However, her Complaint alleges only that Defendant "retaliate[ed] against Plaintiff with respect to the terms, conditions or privileges of employment because of her complaints of sex discrimination and sexual harassment."  ECF No. 1 ¶ 88.  Similarly, her response to Defendant's Motion to Dismiss does not explicitly identify constructive discharge as an adverse action, focusing instead on the HR investigation and loss of professionalism.  *See* ECF No. 13 at 15-16.

Even when taken together, Plaintiff's allegations do not amount to an adverse action. Therefore, the Court need not address the "causal link" element.  Accordingly, the Court grants Defendant's Motion to Dismiss as to Plaintiff's retaliation claims (Counts II and IV).

### D.  Constructive Discharge

Defendant argues that Plaintiff's constructive discharge claims fail to allege that her workplace was objectively intolerable.  ECF No. 12-1 at 14-16.

"Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes."  *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004).  To establish constructive discharge, an employee must show that "the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would

16

resign." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1084 (3d Cir. 1996) (quoting *Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 888 (3d Cir. 1984)).  The inquiry is objective, and an employee's subjective perceptions do not govern.  *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1083 (3d Cir. 1992).

However, courts have considered the subjective impact of discrimination and harassment on the plaintiff combined with objectively intolerable conditions.  *See, e.g.*, *O'Rourke v. Cnty. of Delaware*, 19cv2550, 2020 WL 570843, at *4 (E.D. Pa. Feb. 5, 2020) (plaintiff adequately pleaded constructive discharge by alleging she was passed over for a promotion twice due to her age, took medical leave due to harassment, was diagnosed with PTSD "reactive to her employment situation," and was threatened with termination if she did not return to work).  To determine if an employee was forced to resign, courts consider factors such as whether the employee was threatened with discharge, encouraged to resign, demoted, subjected to reduced pay, benefits, or responsibilities, transferred to a less desirable position, or given unsatisfactory job evaluations.  *Clowes v. Allegheny Valley Hosp.*, 991 F.2d 1159, 1161 (3d Cir. 1993) ("*Clowes* factors").  However, even absent these factors, a "continuous pattern of discriminatory treatment . . . could support a conclusion that [an employee] simply had had enough."  *Aman*, 85 F.3d at 1084 (citing *Levendos v. Stern Entertainment, Inc.*, 860 F.2d 1227, 1232 (3d Cir. 1988).[6]  A reasonable employee will usually explore "alternative avenues," such as filing a grievance or

---

[6] A pattern of discrimination can amount to constructive discharge even if some discriminatory acts do not fit the *Clowes* factors.  *See, e.g.*, *Aman*, 85 F.3d at 1077-79 (reasonable jury could find working conditions intolerable when Black employee experienced six years of discrimination and harassment, including false allegations of misconduct and a formal warning, racist comments, frequent yelling, a supervisor assigning her menial tasks, and pay inequality between Black and white employees); *Ellingsworth*, 247 Supp. 3d at 556 (plaintiff sufficiently alleged constructive discharge where over one-year span, supervisor repeatedly called plaintiff a "dyke," ridiculed her in front of coworkers for her "lesbian tattoo," and told coworkers she was gay, forcing plaintiff to "constantly clarify" her sexual orientation at work).

requesting a transfer, before concluding that resignation is the only option.  *Clowes*, 991 F.2d at 1161.

If a plaintiff alleges that a hostile work environment caused the constructive discharge (a "compound" claim), then "the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment."  *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 316, n.4 (3d Cir. 2006) (quoting *Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir.1992), *aff'd*, 511 U.S. 244).  However, a plaintiff bringing an independent constructive discharge claim does not have to meet this heightened standard.  *See Stremple*, 289 Fed. App'x at 573-74 (affirming dismissal of hostile work environment claim but finding that plaintiff sufficiently alleged constructive discharge through "a slow degradation of his responsibilities, status, and authority" that "forced" him out of his job).

Whether a plaintiff's working conditions were so intolerable that a reasonable person would be forced to resign is a "fact-intensive" question that would be "inappropriate" to decide on a 12(b)(6) motion.  *Hill v. Borough of Kutztown*, 455 F.3d 225, 232, n.7 (3d Cir. 2006) ("Thus, for the purpose of this opinion, we credit all allegations of plaintiff's complaint and accept what plaintiff alleges: that he was constructively discharged.").  Even after *Hill*, a handful of courts have dismissed constructive discharge claims when plaintiffs failed to plead sufficient facts to suggest that a reasonable employee subject to the same working conditions would resign.[7]

---

[7] *See, e.g.*, *Pace v. Plum Borough Sch. Dist.*, 23cv555, 2023 WL 8239129, at *6 (W.D. Pa. Nov. 28, 2023) (school nurse's new job responsibilities due to transfer, including caring for older children and walking fifty yards between sites, were "inconveniences at most," and plaintiff failed to plead that employer knew of asthma-related accommodation request when it transferred her to poorly ventilated site); *Colavecchia v. S. Side Area Sch. Dist.*, 22cv1804, 2023 WL 3043777, at *4 (W.D. Pa. Apr. 21, 2023) (plaintiff did not allege further harassment for the nine months after she reported harassment until she resigned, and she failed to allege any other facts suggesting that a reasonable person in her situation would resign).

The issue is close, but the Court will not dismiss Plaintiff's constructive discharge claim. Plaintiff's Complaint separates her constructive discharge and hostile work environment claims under the broader umbrella of discrimination rather than bringing a true "compound" claim of constructive discharge resulting from a hostile work environment. Therefore, dismissing Plaintiff's hostile work environment claim does not necessarily bar her constructive discharge claim. *See Stremple*, 289 F. App'x at 573. Plaintiff alleges that she was forced to resign after Kilmer's harassment and Defendant's false accusation that Plaintiff was dating her managing attorney one month after reporting Kilmer, who is also an attorney. ECF No. 13 at 17.

Accepting this as true, her Complaint surpasses the few cases that have dismissed constructive discharge claims on a 12(b)(6) motion. For example, unlike the lack of factual allegations in *Colavecchia*, she alleges a meritless investigation into an office relationship with a managing attorney one month after reporting Kilmer. 2023 WL 3043777, at *4; ECF No. 1 ¶¶ 58-61. *Aman* likewise recognized that false allegations of misconduct against the plaintiff supported her constructive discharge claim when combined with other factors. 85 F.3d at 1077-79. Additionally, Plaintiff describes the subjective impact of the harassment—experiencing anxiety that forced her to take medical leave and seek treatment—along with more concrete actions, such as Defendant's investigation. ECF No. 1 ¶¶ 58-61, 63.

Plaintiff does not allege any *Clowes* factors indicating constructive discharge. 991 F.2d at 1161. Nor does she plausibly allege that Kilmer was her supervisor, unlike in *Hill*, *Ellingsworth*, or *Aman*.[8] However, she has pleaded a "continuous pattern of discrimination,"

---

[8] *See also Boandl v. Geithner*, 752 F. Supp. 2d 540, 573 (E.D. Pa. 2010) (identifying two types of constructive discharge claims: a "compound claim" and "constructive discharge independent of a hostile work environment based on the actions of a supervisor"). Notably, while *Stremple* involved a supervisor's harassment, the Third Circuit did not explicitly hold that supervisor misconduct was *required* to prove constructive discharge. 289 F. App'x at 573-74 ("[T]he

including sexual harassment and the false report and investigation, to plausibly allege "that she simply had had enough." *Aman*, 85 F.3d at 1084. Moreover, discovery may reveal that a relationship between a paralegal and a managing attorney constitutes grounds for termination, such that the HR investigation did in fact "threaten" Plaintiff with discharge. *See Clowes*, 991 F.2d at 1161. Finally, as a "reasonable person" would do, Plaintiff reported the harassment and took leave before "coming to the conclusion that resignation [was] the only option." *Id.*

The fact-intensive nature of the inquiry prevents dismissal of Plaintiff's constructive discharge claim. Given the Third Circuit's instruction that constructive discharge claims are inappropriate to resolve on a motion to dismiss, Plaintiff has alleged enough for her constructive discharge claim to proceed to discovery.

### E.    Leave to Amend

Plaintiff requests leave to amend her Complaint if any portion of Defendant's motion is granted, arguing that amendment would not be futile. ECF No. 13 at 18.

Courts have broad discretion to grant leave to amend "when justice so requires." *See* Fed. R. Civ. P. 15(a)(2). The Federal Rules express "a preference for liberally granting leave to amend" unless "amendment would cause undue delay or prejudice, or that amendment would be futile." *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000). "Amendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss." *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988).

---

conduct of Stremple's superiors . . . taken together with the other evidence of ageist statements [by coworkers], transfer, relocation of his office, etc., provided sufficient evidence to establish constructive discharge.").

20

Here, amendment would likely not be futile.  If Plaintiff can provide additional facts and context to extend Jasinski's conduct into the limitations period, her race-based claims may be timely.  Furthermore, if Plaintiff can allege facts within the limitations period evincing Defendant's negligence in discovering Jasinski's misconduct or responding to it, her hostile work environment claim may survive.  Plaintiff could also provide more facts connecting her report to HR with her coworker's email; the investigation into Plaintiff and her supervisor; and her loss of professionalism.  Doing so could support her retaliation claims, especially if she can be more specific about the professional consequences if Defendant believed Plaintiff was dating her managing attorney.  Because amendment would not be futile, the Court grants Plaintiff leave to amend her Complaint.

## IV.    CONCLUSION

The Court grants Defendant's Motion to Dismiss as to Plaintiff's retaliation claims (Counts II and IV).  The Court also grants Defendant's Motion to Dismiss in part as to Plaintiff's discrimination claims and denies the Motion in part as to her constructive discharge claims (Counts I and III).  The Court grants Plaintiff leave to amend her Complaint.  An appropriate Order will follow.

BY THE COURT:

_____
MARY KAY COSTELLO
United States District Judge

21